IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FINTIV, INC., a Delaware Corporation, | |
| *Plaintiff*, | Civil Action No. 1:25-cv-04413-TRJ |
| v. | |
| APPLE INC., a California Corporation, | |
| *Defendant*. | |

**APPLE INC.'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A) OR IN THE ALTERNATIVE TO DISMISS UNDER RULE 12(B)(6) FINTIV'S <u>FIRST AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................1

II.     BACKGROUND ........................................................................................2

    A.      Fintiv Lost on the Merits of Its Patent Claims ......................................3

    B.      Fintiv's Mobile Wallet Technology Is at Issue Here ............................4

    C.      Fintiv's Mobile Wallet Technology Was at Issue in the Patent Case ....4

    D.      Fintiv Has Long Known of Apple's Interactions with CorFire............5

    E.      Fintiv Fought to Keep the Patent Case Before Judge Albright............7

    F.      Fintiv Amended Its Complaint After Apple Moved to Transfer or in the Alternative to Dismiss..................................................................8

III.    JUDICIAL NOTICE OF THE PATENT CASE IS APPROPRIATE .............8

IV.     THIS CASE SHOULD BE TRANSFERRED TO JUDGE ALBRIGHT .......9

    A.      Fintiv Could Have Filed This Suit in the Western District of Texas...10

    B.      This Circuit's Private and Public Factors Warrant Transfer...............11

        1.      The Convenience of the Witnesses Favors Transfer. ................11

        2.      The Locations of Relevant Documents and the Relative Ease of Access to Sources of Proof Favor Transfer..............................12

        3.      The Convenience of the Parties Favors Transfer. ....................13

        4.      The Locus of Operative Facts Is Neutral. ................................13

        5.      The Availability of Process to Compel Attendance of Unwilling Witnesses Is Neutral..................................................................14

        6.      The Relative Means of the Parties Favors Transfer. ................14

        7.      The Forum's Familiarity with Governing Law Is Neutral........14

        8.      The Weight Accorded a Plaintiff's Choice of Forum Is Neutral. ...................................................................................15

        9.      Trial Efficiency and the Interests of Justice Favor Transfer. ....15

        10.     Balance of Factors....................................................................18

V.      ALTERNATIVELY, FINTIV'S CLAIMS SHOULD BE DISMISSED .......18

    A.      Fintiv's Trade Secret and Federal RICO Claims Are Time-Barred ....19

1.    Fintiv Discovered the Alleged Misappropriation No Later than July 2020 When It Moved to Amend Its Patent Complaint......20

2.    Fintiv Should Have Discovered the Alleged Misappropriation When It Sued Apple in December 2018. .................................21

3.    Fintiv, Through Its Predecessor-in-Interest CorFire, Should Have Discovered the Alleged Misappropriation When Apple Pay Launched in October 2014.................................................22

4.    Fintiv's DTSA Claim Is Also Barred Because Fintiv Admitted to Discovering the Alleged Misappropriation in June 2022. ....24

5.    Fintiv's Allegations of Continuing Misappropriation or Later Acts of Racketeering Do Not Reset the Limitations Clock......24

6.    Fintiv Fails to Plead Equitable Tolling of the Applicable Statutes of Limitations Based on Fraudulent Concealment......26

B.    Fintiv's Georgia RICO Claim Is Preempted by the GTSA.................28

C.    Fintiv Has Not Adequately Pled Its Trade Secret Claims...................29

D.    Fintiv Has Not Adequately Pled Its RICO Claims.............................31

1.    Fintiv Fails to Plausibly Allege the Existence of an Enterprise. ..................................................................................................32

2.    Fintiv Fails to Plausibly Allege a Pattern of Racketeering Activity...................................................................................35

VI.    CONCLUSION............................................................................................40

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. First Unum Life Ins. Co.*,
No. 2:18-cv-69-FtM-99MRM, 2019 WL 1359480 (M.D. Fla. Mar.
26, 2019) .................................................................................................35

*Ambrosia Coal & Const. Co. v. Pages Morales*,
482 F.3d 1309 (11th Cir. 2007) .........................................................32

*AmNet Esop Corp. v. CrossCountry Mortg., Inc.*,
No. 2:23-cv-10-RWS, 2023 WL 9181488 (N.D. Ga. Dec. 18,
2023) ..............................................................................28, 29, 33, 34

*Aquino v. Mobis Ala., LLC*,
739 F. Supp. 3d 1152 (N.D. Ga. 2024).........................................15, 32

*Archer v. Am.'s First Fed. Credit Un.*,
No. 19-cv-0258-TFM-MU, 2019 WL 6481303 (S.D. Ala. Sept. 17, 2019) ......10

*Austin v. Grand Canyon Univ., Inc.*,
No. 1:19-cv-03734-SCJ, 2020 WL 13526627 (N.D. Ga. May 11, 2020) ..........26

*Azima v. Del Rosso*,
No. 1:20-cv-954, 2021 WL 5861282 (M.D.N.C. Dec. 10, 2021) .....................25

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) ...........................................32, 33, 35

*CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*,
No. 16-cv-33-LRR, 2017 WL 6210920 (N.D. Iowa Dec. 8, 2017) ..................24

*Dowling v. United States*,
473 U.S. 207 (1985) ...........................................................................40

*DynCorp Int'l v AAR Airlift Grp. Inc.*,
664 F. App'x 844, 848 (11th Cir. 2016).........................................................30

*E.T. Mfg. Co. v. Xomed, Inc.*,
679 F. Supp. 1082 (M.D. Fla. 1987).................................................24

*Fairbanks Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
No. 1:13-cv-2399-MHC, 2015 WL 11232355 (N.D. Ga. Feb. 11, 2015)..........17

*Fireman's Fund Ins. Co. v. Comtran Grp., Inc.*,
No. 1:13-cv-1164-WSD, 2013 WL 12064285 (N.D. Ga. Oct. 7, 2013) ............16

*Hall v. GE Plastic Pac. PTE Ltd.*,
327 F.3d 391 (5th Cir. 2003) ...............................................................................18

*Halpin v. Crist*,
405 F. App'x 403 (11th Cir. 2010) ......................................................................36

*Kearney v. Oppenheimer & Co., Inc.*,
915 S.E.2d 709 (2025) .........................................................................................38

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)..............................................................................................27

*Lehman v. Lucom*,
727 F.3d 1326 (11th Cir. 2013) ..........................................................20, 25, 26

*Leon v. Cont'l AG*,
301 F. Supp. 3d 1203 (S.D. Fla. 2017) ...............................................................32

*Long v. Sports44.com, Inc.*,
No. 8:06-CV-2384-T-27TGW, 2007 WL 3072405 (M.D. Fla. Oct.
19, 2007) ..............................................................................................................14

*Manuel v. Convergys Corp.*,
430 F.3d 1132 (11th Cir. 2005) ..........................................................................11

*Mirasco, Inc. v. Am. Nat. Fire Ins. Co.*,
No. 1:00-cv-947-ODE, 2000 WL 34440850 (N.D. Ga. July 5,
2000) ...............................................................................................................10, 17

*Motley v. Taylor*,
451 F. Supp. 3d 1251 (M.D. Ala. 2020)................................................................9

*U.S. ex rel. Osheroff v. Humana Inc.*,
776 F.3d 805 (11th Cir. 2015) ...............................................................................9

*Premier Concrete LLC v. Argos N. Am. Corp.*,
No. 1:20-cv-00307-SDG, 2021 WL 1209354 (N.D. Ga. Mar. 31, 2021)............27

*PuffCuff, LLC v. Quality Plastic Prods., Inc.*,
  No. 1:21-cv-04663-SEG, 2022 WL 3700103 (N.D. Ga. June 2, 2022)............15

*Ranger Env't Servs. LLC v. Foehl*,
  No. 1:23-cv-00297-KDM, 2023 WL 6931336 (S.D. Ala. Oct. 19, 2023)...........30

*Ray v. Spirit Airlines, Inc.*,
  836 F.3d 1340 (11th Cir. 2016) ....................................................................*passim*

*RoadSync, Inc. v. Relay Payments, Inc.*,
  No. 1:21-cv-3420-MLB, 2022 WL 4715656 (N.D. Ga. Sept. 30,
  2022)...............................................................................................................30, 31

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
  517 F. Supp. 2d 1125 (E.D. Mo. 2007) ...............................................................40

*Slater v. U.S. Steel Corp.*,
  871 F.3d 1174 (11th Cir. 2017) ...........................................................................18

*STMicroelectronics, Inc. v. Lopez*,
  No. 15-cv-3919-PJH, 2015 WL 9178417 (N.D. Cal. Dec. 17, 2015)..................14

*Team Herschel, Inc. v. Scott Howell & Co., Inc.*,
  No. 1:24-cv-02859-TRJ, 2025 WL 1527072 (N.D. Ga. May 7, 2025)...............31

*Van Buren v. United States*,
  593 U.S. 374 (2021) ............................................................................................39

*Ward v. Figure Lending, LLC*,
  No. 1:23-cv-00516-MLB-RDC, 2023 WL 6194046 (N.D. Ga. June
  21, 2023).......................................................................................................*passim*

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
  792 F.3d 1313 (11th Cir. 2015)......................................................................31, 32

*U.S. v. Aleynikov*,
  676 F.3d 71 (2d Cir. 2012) ............................................................................40, 41

*U.S. v. Yijia Zhang*,
  995 F. Supp. 2d 340 (E.D. Pa. 2014)...................................................................40

*Zirvi v. Flatley*,
  433 F. Supp. 3d 448 (S.D.N.Y.) ..........................................................................28

**Statutes**

18 U.S.C.
§ 1836(c) ................................................................................................10
§ 1836(d) .........................................................................................19, 25
§ 1839 ....................................................................................................15
§ 1964(c) ...............................................................................................11
§ 1965(a) ...............................................................................................11
§ 2314 ..............................................................................................26, 39
§ 2315 ....................................................................................................26

28 U.S.C.
§ 1331 ....................................................................................................10
§ 1367(a) ...............................................................................................11
§ 1391(b)(1) ..........................................................................................11
§ 1391(d) ...............................................................................................11
§ 1404(a) ...............................................................................................10

O.C.G.A.
§ 10-1-761 .............................................................................................15
§ 10-1-766 ......................................................................................20, 25
§ 10-1-767(a) ........................................................................................28
§ 16-9-92(18) ........................................................................................39
§ 16-9-93(a)-(b) ....................................................................................39
§ 16-10-20 ......................................................................................37, 38
§ 16-14-4(a) ..........................................................................................32

**Rules**

Fed. R. Civ. P.
9(b) ................................................................................................32, 38
12(b)(6) ..........................................................................................9, 19

Fed. R. Evid. 201 ..................................................................................9

## I.    INTRODUCTION

Fintiv's amended trade secret complaint is still no more than a bare attempt to repackage and revive its failed patent case. After seven years of litigation before Judge Alan Albright in the Western District of Texas, Fintiv lost on most of its patent claims against Apple and dismissed the rest on the eve of trial. Two days later, Fintiv filed this suit. After Apple moved to transfer or dismiss, Fintiv filed a First Amended Complaint ("FAC"). But Fintiv's amendments fail to cure the deficiencies Apple highlighted and, in fact, further highlight why the Court should transfer or dismiss.

Due to the unique and extensive history between the parties regarding this subject matter, this case belongs in Texas. The mobile wallet technology at issue here and the allegedly patented technology litigated in Texas are substantively the same. Judge Albright thus is deeply familiar with the parties and relevant facts. Moreover, Fintiv previously opposed Apple's motion to transfer the patent case to California, arguing that Texas was "the right place" and Judge Albright "the right judge" to adjudicate its claims. It should be held to that position rather than being allowed to pursue its claims in this District, which has no connection to this case.

Regardless of venue, Fintiv's equally baseless new claims should be dismissed for several reasons. First, Fintiv's Defend Trade Secrets Act (DTSA), Georgia Trade Secrets Act (GTSA), and federal RICO claims are time-barred. These claims are based on alleged facts Fintiv relied on during its patent case in 2020—stating that it

1

"fully appreciated" them—and that Fintiv has known or had access to since 2014. But Fintiv waited until August 6, 2025, after its patent case failed, to file this action. By then, the applicable statutes of limitations had run.  Second, because it is entirely based on trade secret misappropriation, Fintiv's Georgia RICO claim is preempted by the GTSA.  Third, Fintiv's DTSA and GTSA claims should be dismissed because Fintiv fails to identify the trade secrets at issue with sufficient particularity.  Finally, in trying to re-cast a trade secret claim in RICO terms, Fintiv fails to adequately plead a racketeering enterprise and a pattern of predicate racketeering acts.

Underscoring the frivolousness of this case, Fintiv did not even serve Apple with the original complaint until November 3, a week after Apple filed its motion to transfer and dismiss (renewed herein), despite having filed this action on August 6. The FAC does nothing to rehabilitate Fintiv's meritless claims and only further highlights their deficiencies.  The Court should reject Fintiv's attempt to revive its failed patent case in a new district with no connection to the facts.  Judicial economy would be best served by transfer, but in the alternative, the Court should dismiss this case as time-barred, preempted, and inadequately pled.

## II.    BACKGROUND

In 2018, Fintiv asserted U.S. Patent No. 8,843,125 ("the '125 patent") against Apple in the Western District of Texas.  *Fintiv, Inc. v. Apple Inc.*, Case No. 1:21-cv-00896-ADA ("Patent Case"), Dkt. No. 1.  The Patent Case involved the same mobile

wallet technology at issue here. Judge Albright presided over that case for nearly seven years before dismissing the last of Fintiv's claims on August 4, 2025. Dkt. No. 543.[1] Fintiv filed the present action two days later.

### A.    Fintiv Lost on the Merits of Its Patent Claims

After seven years of litigation, Apple prevailed on summary judgment of non-infringement. In that time, Fintiv had every opportunity to make its case. Indeed, Fintiv's claims proceeded through five years of litigation (and 467 docket entries) before Apple first won summary judgment of non-infringement on June 21, 2023. Dkt. No. 468. Across a ten-page opinion engaging with technical details of the '125 patent and the accused Apple Pay technology, Judge Albright explained why Fintiv lacked evidence of the claimed "widget." *Id.*

Fintiv appealed. On May 16, 2025, the Federal Circuit reversed and remanded, pointing out a second non-infringement issue. Dkt. No. 482, 12. On August 1, 2025, Apple won summary judgment of non-infringement again as to most of the asserted patent claims (including those discussed below in Section II.C). Dkt. No. 547, 2. Fintiv dismissed its remaining claims the next day, on the eve of trial. Dkt. No. 541. It then filed another notice of appeal, indicating it may seek relief that could yet find the case returned to Judge Albright. Dkt. No. 558.

_____

[1] Except the First Amended Complaint ("FAC"), all citations to docket entries are to the Patent Case. An appendix of these docket entries appears at Dawson Decl. ¶ 12.

**B.    Fintiv's Mobile Wallet Technology Is at Issue Here**

The alleged trade secrets came from SK C&C USA, Inc. (aka "CorFire"), a company in which Fintiv gained a majority stake in 2014 and acquired in 2015.

Fintiv claims that, by meeting with CorFire under NDAs in 2011-2012, Apple acquired CorFire trade secrets relating broadly to "secure element, widget, and NFC [near-field communication]-enabled mobile wallet technologies" and used them to develop Apple Pay. FAC ¶¶ 127-28. The FAC describes the technical substance of the alleged trade secrets exactly once, stating that they relate to "(a) an NFC-enabled mobile wallet application; (b) a secure element; (c) an ability to store payment card information/credentials on the secure element chip; (d) widgets that represent a physical card and have a user interface; and (e) a trusted service manager." *Id.* ¶ 128.

**C.    Fintiv's Mobile Wallet Technology Was at Issue in the Patent Case**

The '125 patent at issue in the Texas case discloses the same technology Fintiv now seeks to repackage as its trade secrets. Per Fintiv, the patent concerns a "mobile wallet management system to store contactless cards in a secure element." Dkt. No. 1 ¶ 12. Notably, the patent discloses all five of the above elements that Fintiv alleges Apple took from CorFire. Claim 18 recites a "mobile wallet application" and "Trusted Service Manager (TSM) system." Dkt. No. 1-1, 14:7-23. Claim 23 recites a "mobile wallet application" that "store[s] a widget corresponding to a contactless card applet" stored in a "secure element." *Id.*, 14:39-53. Claim 25 recites storing

on the secure element "a card number to access financial information, a security code, a personal identification number (PIN), and an expiration date." *Id.*, 14:58-61.

In the Patent Case, Fintiv accused Apple Wallet and Apple Pay of infringing each of these patent claims. Dkt. No. 1 ¶¶ 16-25. It now accuses the same products of incorporating its alleged trade secrets. Likewise, Fintiv previously accused Apple of facilitating infringement by partners like "card issuers" by "providing a mobile wallet that enables the provisioning of contactless cards." *Id.* ¶¶ 3, 26. Now, Fintiv alleges that those same partners are part of Apple's alleged RICO enterprise.

### D.    Fintiv Has Long Known of Apple's Interactions with CorFire

Although Fintiv waited until after its Patent Case failed to file this action, by its own admission, Fintiv knew of the allegations underlying its claims years ago.

On July 14, 2020—over five years before it filed this action—Fintiv moved to amend its patent complaint a third time to plead (among other things) willful infringement. Dkt. No. 203, 11:15-18. Per Fintiv, amendment was justified because of its recent discovery that Apple allegedly learned of the secure element technology at issue (1) at a 2011 meeting with CorFire, and (2) through an ex-employee of SK C&C (CorFire's parent before Fintiv acquired it) who became aware of it before joining Apple. *Id.*, 21:22-22:4, 35:23-24, 36:7-11. Fintiv's counsel also interviewed a former CorFire employee about "interactions between [CorFire] and Apple." Dkt. No. 203, 52:3-11. Fintiv argued these discoveries led it to "fully appreciate" the

"extent of the communications by [CorFire] with Apple." *Id.*, 88:20-89:5. The court, however, did not find good cause to amend. *Id.*, 96:20-21.

Two years later, on June 6, 2022 (three years before filing this action), Fintiv revisited the issue in an emergency motion to reopen discovery. Dkt. No. 435. Fintiv again claimed to have learned new facts, namely (1) contacts between CorFire and Apple in 2011-12, including a January 31, 2012 meeting at which CorFire allegedly shared "key aspects of its patented technologies," and (2) Apple's hiring of a second CorFire-affiliated employee. *Id.*, 2-3. Fintiv argued this revealed "the relationship between the parties, copying, indirect infringement, willful infringement, . . . and ***trade secret misappropriation***." *Id.*, 9 (emphasis added). But Fintiv did not explain why it failed to discover this sooner by investigating the directly related facts it presented to the court in 2020. As Apple noted in response, "[a]ll the information Fintiv supposedly discovered . . . has been in its possession all along," as Fintiv had "acquired the assets of" CorFire four years before the Patent Case. Dkt. No. 438, 1.

Although Judge Albright nevertheless granted limited discovery, *see* Dkt. No. 441, Fintiv made virtually no effort to pursue that discovery, *see* Dkt. No. 509-3. In fact, after Apple provided custodians and search terms on August 29, 2022, Fintiv was silent for four months until finally requesting to meet and confer in December of that year, after which it identified desired custodians and search terms two days before Christmas. *Id.* Apple responded with information and objections on January

9, 2023. *Id.* Fintiv's next response was to file—five months later and on the eve of trial—yet another emergency motion. *See id.*; Dkt. No. 494. Judge Albright denied that motion on July 29, 2025 (in an unnumbered docket order) and the issue became moot after entry of final judgment for Apple. *See* Dkt. No. 546.

### E.    Fintiv Fought to Keep the Patent Case Before Judge Albright

Fintiv opposed Apple's motion at the start of the Patent Case to transfer to the Northern District of California, and in the alternative, to transfer intradistrict from Waco to Austin. Dkt. No. 40. Fintiv argued that "a wealth of relevant evidence and witnesses" were in the Western District of Texas, including "all of Fintiv's relevant documents and key witnesses." Dkt. No. 45, 1. Fintiv's Human Resources Director confirmed that six key Fintiv employees, including its president, worked in its Austin office—its only office—and that other key employees were willing to appear for trial in Texas. Dkt. No. 43 ¶¶ 3, 6-8. Fintiv also argued that Apple had general local ties to Austin and that relevant third parties were based in or around the Western District. Dkt. No. 45, 5-6. Thus, Fintiv said, that district had superior access to sources of proof and a stronger interest in the dispute. *Id.*, 9. Fintiv did not mention Georgia.

Rather than transfer to California, Judge Albright granted Apple's alternative request for intradistrict transfer to the Austin Division, crediting the Western District of Texas's localized interest in the case. Dkt. No. 73, 15-16. In finding other transfer factors to be neutral, Judge Albright further noted that potential third-party witnesses

were present in both his district and the Northern District of California. *Id.*, 7, 11.

### F.     Fintiv Amended Its Complaint After Apple Moved to Transfer or in the Alternative to Dismiss

On October 27, 2025, Apple moved to transfer this case to the Western District of Texas and Judge Albright, or in the alternative to dismiss the claims as time-barred and otherwise fatally deficient. Fintiv filed its FAC on November 25, and the Court denied Apple's motion as moot. The FAC differs from the original complaint in that it invokes events that occurred in the Patent Case, *see* FAC ¶¶ 78-93, speculates as to the alleged relationship between Apple and the card issuers and payment networks participating in Apple Pay, *see id.* ¶¶ 94-112, and alleges new predicates as the basis of its RICO claims, *see id.* ¶¶ 184-89, 207-12, 234-54. As none of this saves Fintiv's claims, Apple renews its motion for the same reasons as before, as well as the further ground that Fintiv has failed, twice, to identify trade secrets with particularity.

## III.    JUDICIAL NOTICE OF THE PATENT CASE IS APPROPRIATE

Apple requests that the Court take judicial notice of the following entries from the Patent Case docket: Dkt. No. 1 (complaint); Dkt. No. 1-1 (asserted patent); Dkt. No. 45 (Fintiv's opposition to transfer); Dkt. No. 66 (transcript of hearing on transfer motion); Dkt. 203 (transcript of hearing on Fintiv's motion to amend complaint); and Dkt. 435 (Fintiv's motion to reopen discovery). *See* Dawson Decl. Exs. A-F.

"Courts may take judicial notice of publicly filed documents . . . at the Rule 12(b)(6) stage." *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th

Cir. 2015); *see also* Fed. R. Evid. 201. Below, Apple relies only on facts that are not subject to reasonable dispute in view of what occurred—and what Fintiv said—in the Patent Case. The positions Fintiv took to justify keeping the Patent Case in the Western District are highly relevant to transfer. *See* Section IV.B, *infra*. Similarly, the Patent Case shows when Fintiv discovered or should have discovered the facts alleged in the FAC, which is key to whether Fintiv's claims are time-barred. *See* Section V.A, *infra*. The Patent Case also shows the technical overlap between the alleged trade secrets and publicly available patented technology. *See* Section V.A.2, *infra*. And, notably, Fintiv relies heavily on events that occurred during the Patent Case in its attempt to justify the late timing of this suit. *See* FAC ¶¶ 78-93.

Courts in the Eleventh Circuit have relied on judicially noticed facts in similar contexts. *See, e.g.*, *Motley v. Taylor*, 451 F. Supp. 3d 1251, 1270 (M.D. Ala. 2020) (taking judicial notice of a date in state court records to grant dismissal under statute of limitations); *Archer v. Am.'s First Fed. Credit Un.*, No. 19-cv-0258-TFM-MU, 2019 WL 6481303, at *8 (S.D. Ala. Sept. 17, 2019) (taking judicial notice of court docket showing plaintiff had "simply waited until" its earlier case was over before "filing the instant lawsuit in an attempt to get a second bite at the proverbial apple").

## IV.    THIS CASE SHOULD BE TRANSFERRED TO JUDGE ALBRIGHT

This case has nothing to do with the Northern District of Georgia. Instead, it springs from the same facts as the Patent Case, where Fintiv successfully opposed

transfer *from* the Western District of Texas by relying on the convenience and local interests of that district. After six more years of litigation, Judge Albright determined that Apple Pay did not use Fintiv's allegedly proprietary mobile wallet technology. These unique circumstances definitively support transfer to that court.

## A.    Fintiv Could Have Filed This Suit in the Western District of Texas

The test for transfer under 28 U.S.C. § 1404(a) requires first assessing whether the action "might have been brought" in the alternative venue. *Mirasco, Inc. v. Am. Nat. Fire Ins. Co.*, No. 1:00-cv-947-ODE, 2000 WL 34440850, at *4 (N.D. Ga. July 5, 2000). Fintiv cannot dispute that it could have filed in the Western District, as it already filed the Patent Case there on the same technology.

The Western District of Texas would have original subject matter jurisdiction over Fintiv's federal claims under 28 U.S.C. § 1331, 18 U.S.C. § 1836(c) (DTSA), and 18 U.S.C. § 1964(c) (RICO). It also would have supplemental jurisdiction over the state law claims which, per Fintiv, arise from "the same case or controversy" and "nucleus of operative facts" as its federal ones. FAC ¶ 49; 28 U.S.C. § 1367(a). And both parties have offices in the Western District, establishing personal jurisdiction.

Venue would also be proper. First, the Western District of Texas is "a judicial district in which" Apple, the sole defendant, "resides." 28 U.S.C. § 1391(b)(1); 28 U.S.C. § 1391(d). Second, venue for a federal civil RICO action is proper in "any district" in which" the defendant "resides, is found, has an agent, or transacts his

10

affairs," which Apple does in the Western District.  18 U.S.C. § 1965(a).

**B.    This Circuit's Private and Public Factors Warrant Transfer**

The Eleventh Circuit's factors overwhelmingly favor transfer, especially in view of Fintiv's prior fight to keep the Patent Case in Texas.  Those factors are:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  Here, almost every factor favors transfer, while no factor meaningfully weighs against it.

1.    <u>The Convenience of the Witnesses Favors Transfer.</u>

This factor favors transfer to the Western District of Texas for the same reason Fintiv argued it warranted keeping the Patent Case in that District:  More non-party witnesses, including those Fintiv named in the Patent Case, reside there than in this District.  *See* Dkt. No. 45, 5; *Ward v. Figure Lending, LLC*, No. 1:23-cv-00516-MLB-RDC, 2023 WL 6194046, at *3 (N.D. Ga. June 21, 2023) ("Non-party witnesses' convenience carries more weight on the decision to transfer because they have less interest in the proceedings and, thus, may be less willing to appear.").

The potential non-party witnesses fall into three groups.  The first consists of the non-party individuals named at paragraphs 66-77 and 124-26 of the FAC.  Only

11

two of these ten individuals appear to reside in this District. *See* Dawson Decl. ¶ 9, Ex. G. The second group consists of five current and former NXP employees who Fintiv has alleged to be knowledgeable about the NFC controllers used with Apple Pay. Dkt. No. 45, 5; FAC ¶¶ 25, 113, 117, 127-28, 135, 157, 162, 170, 263, 280, 292, 303, 311. All five appear to be based in Austin. *See* Dawson Decl. ¶ 10, Ex. H. The third group are the card issuers and payment networks Fintiv accuses of partaking in Apple's RICO enterprise. FAC ¶¶ 111-12. None reside in this District.[2] *See* Dawson Decl. ¶ 11, Ex. J. As for party witnesses, Apple is not aware of any in this District, while the Western District is home to at least Fintiv's president and CEO. *Id.*, Ex. I.

Thus, five potential non-party witnesses and at least one key party witness are in the Western District of Texas, versus only two potential non-party witnesses in this District. The witness convenience factor therefore favors transfer.

> ### 2. The Locations of Relevant Documents and the Relative Ease of Access to Sources of Proof Favor Transfer.

Because of "the predominance of electronic discovery in the modern era," the "physical location of relevant documents" has become less significant in the transfer

---

[2] Two of these alleged enterprise members, Wells Fargo and Visa, are headquartered in the Northern District of California. *See* Dawson Decl. ¶ 11, Ex. I. Apple submits that the Northern District of California would also be a more proper alternative venue to this District, in view not only of the presence of Wells Fargo, Visa, and Apple, but also because all of the key events named in the FAC occurred there. *See* FAC ¶¶ 66-77 (alleged CorFire-Apple meetings were in San Francisco and Cupertino).

inquiry under Eleventh Circuit law. *Ward*, 2023 WL 6194046, at *4. Nevertheless, this factor slightly favors transfer because there are no relevant sources of proof in this District, while Fintiv's primary and only office is in Austin. Dkt. No. 45, 4.

### 3.    The Convenience of the Parties Favors Transfer.

The Western District of Texas is more convenient for both parties than this District. Neither party is based in or maintains offices in this District. Meanwhile, Fintiv is headquartered in Austin. *Id.* It is irrelevant that Fintiv's predecessor-in-interest, CorFire, operated in this District because CorFire no longer exists; Fintiv acquired it in 2015. *See STMicroelectronics, Inc. v. Lopez*, No. 15-cv-3919-PJH, 2015 WL 9178417, at *4 (N.D. Cal. Dec. 17, 2015) (location of defunct company before it merged into plaintiff was "irrelevant for purposes of determining the convenience of the parties as of the time" complaint was filed); *Long v. Sports44.com, Inc.*, No. 8:06-CV-2384-T-27TGW, 2007 WL 3072405, at *7 (M.D. Fla. Oct. 19, 2007) (location of dissolved defendant could not justify transfer to home district).

### 4.    The Locus of Operative Facts Is Neutral.

"This factor considers the closeness of relation between the judicial forum and the cause of action—specifically, the site of events from which the claim arises." *Ward*, 2023 WL 6194046, at *5 (cleaned up). Here, the factor is neutral because the key operative facts occurred neither in the Western District of Texas nor the Northern District of Georgia. Fintiv alleges that the CorFire personnel who disclosed the trade

secrets to Apple were "Georgia-based," FAC ¶ 59, but also that the disclosure itself occurred in California, *id.* ¶¶ 66-77. At most, Georgia is one of many places in which Apple sells devices that Fintiv claims contain its trade secrets. *See* FAC ¶ 272. But so, too, is the Western District of Texas.

>    5.    The Availability of Process to Compel Attendance of Unwilling Witnesses Is Neutral.

In this Circuit, this factor "concerns ***unwilling*** witnesses" and therefore bears "limited significance" absent evidence that a witness "would be unwilling to testify." *Ward*, 2023 WL 6194046, at *5 (cleaned up). There is no such evidence here.

>    6.    The Relative Means of the Parties Favors Transfer.

Here, the question is "whether one party is better positioned to bear the costs of a change in venue." *Id.* at *6. There is no evidence of hardship to either party in either forum, but Texas would still be more convenient, as noted under Factor 3.

>    7.    The Forum's Familiarity with Governing Law Is Neutral.

As "district courts often have little trouble applying the law of other states," absent a showing "that the case turns on nuanced issues of another state's law," this factor is neutral. *PuffCuff, LLC v. Quality Plastic Prods., Inc.*, No. 1:21-cv-04663-SEG, 2022 WL 3700103, at *5 (N.D. Ga. June 2, 2022). (cleaned up). There are no nuanced issues of state law here. The elements of Fintiv's state and federal claims are virtually the same. For example, the GTSA and DTSA apply nearly identical definitions of "trade secret" and "misappropriation." *Compare* O.C.G.A. § 10-1-761

14

*with* 18 U.S.C. § 1839. And courts find "federal authority persuasive in interpreting" the Georgia RICO Act because it "was modeled after" federal RICO. *See Aquino v. Mobis Ala., LLC*, 739 F. Supp. 3d 1152, 1191 (N.D. Ga. 2024) (cleaned up).

Indeed, the Court need only look to the FAC itself to see how Fintiv has pled its federal and state claims in the same way. *See, e.g.*, FAC ¶¶ 223-28 (pleading enterprise element for state RICO by referencing federal RICO pleading); *id.* ¶ 257 ("expressly incorporat[ing] federal RICO predicates" into state RICO pleading); *id.* ¶¶ 279-301, 303-20 (substantively identical GTSA and DTSA pleadings).

### 8.  The Weight Accorded a Plaintiff's Choice of Forum Is Neutral.

In this Circuit, a plaintiff's choice of forum is "entitled to less deference when a plaintiff files suit outside of its home forum or where the operative facts underlying the cause of action did not occur in the forum chosen by the plaintiff." *Fireman's Fund Ins. Co. v. Comtran Grp., Inc.*, No. 1:13-cv-1164-WSD, 2013 WL 12064285, at *5 (N.D. Ga. Oct. 7, 2013). Fintiv's home forum is the Western District of Texas and the operative facts occurred in California. Furthermore, Fintiv already chose the Western District of Texas for its first case against Apple. Having lost, Fintiv filed in this District, where no operative fact occurred. Fintiv's choice merits no deference.

### 9.  Trial Efficiency and the Interests of Justice Favor Transfer.

"This last factor serves as a catchall for considerations such as administrative efficiency, local interests in having localized controversies decided at home, and all

other practical problems that make trial of a case easy, expeditious and inexpensive." *Ward*, 2023 WL 6194046, at \*7.  This factor overwhelmingly favors transfer.

Judge Albright has presided for seven years over a dispute involving the same parties and the same technology.  In that time, he provided substantive decisions on transfer, claim construction, dismissal, exclusion of expert testimony, and summary judgment.  Dkt. Nos. 73, 86, 184, 401, 424, 468, 547.  To help decide those issues, Judge Albright held thorough hearings, *see, e.g.*, Dkt. Nos. 66, 83, 188, 202, 203, 259, and appointed a technical advisor to ensure full understanding, Dkt. No. 298. Throughout the case, Judge Albright issued case management orders and conducted numerous scheduling and discovery conferences.  *See generally*, Patent Case Dkt. In fact, Fintiv has already presented to Judge Albright the key factual allegations in the FAC.  *See* Dkt. Nos. 139-1, 203, 435; *see also* Section II.D, *supra*.  Due to Judge Albright's familiarity with the parties, their history, and the technology at issue, transfer will promote judicial economy and efficiency.

Indeed, courts find this factor to be the "most persuasive reason" to transfer a case where transfer would prevent "duplication of judicial effort" and "inconsistent results." *Mirasco*, 2000 WL 34440850, at \*5; *Fairbanks Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 1:13-cv-2399-MHC, 2015 WL 11232355, at \*10 (N.D. Ga. Feb. 11, 2015) ("interests of justice" are "strongly furthered by transfer" where it would allow "consistency in the results" of related cases).  Here, Judge Albright's

16

rulings on and familiarity with Fintiv's patent will help ensure consistency on what, if anything, comprises Fintiv's trade secrets, as opposed to patented or otherwise publicly known technology. Similarly, that court's experience with Apple Wallet and Apple Pay will promote consistency between prior findings of non-infringement and future findings on misappropriation. Moreover, as explained in Section V.A.6, *infra*, the FAC expressly relies on the discovery process ***in the Patent Case*** and on orders issued ***by Judge Albright*** to try and justify why Fintiv waited until after the statutes of limitations expired to bring its claims. *See* FAC ¶¶ 82-93.

Furthermore, while Fintiv's latest appeal from the Patent Case is meritless, it remains possible that Judge Albright will once again preside over its failed patent claims. Fintiv has also noticed its intent to challenge Judge Albright's decision not to continue trial and allow further discovery into the same facts and issues Fintiv raises in this action. *See* Dkt. No. 558; Section II.D, *supra*. Thus, transfer will help ensure consistency with both prior Patent Case findings and potential future ones.

Moreover, Fintiv should be held to the position it took in the Patent Case that the Western District of Texas has a strong local interest in resolving disputes between Fintiv and Apple. *See* Dkt. No. 45, 10. At the hearing on Apple's transfer motion in that case, Fintiv presented a lengthy argument on that point, concluding firmly that the Western District was "the right place" and Judge Albright "the right judge." Dkt. No. 66, 46:2-21. Thus, Fintiv is judicially estopped from arguing in this case that

17

the Western District of Texas is not the appropriate forum. *See Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017) (judicial estoppel prohibits parties from making "a mockery of the judicial system" by taking "inconsistent positions"); *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 397 (5th Cir. 2003) (a party cannot, "for convenience or gamesmanship after [an] argument has served its purpose, advance a different and inconsistent argument"). The interests of justice call for transfer.

10.   <u>Balance of Factors.</u>

The balance of factors favors transfer. As Judge Albright is already familiar with the parties and the technology—including the allegations Fintiv makes here—transfer will promote judicial efficiency and the interests of justice. The Western District also is more convenient for witnesses and parties. No factor opposes transfer.

## V.   ALTERNATIVELY, FINTIV'S CLAIMS SHOULD BE DISMISSED

Should the Court decide to retain this case, it should dismiss each of Fintiv's causes of action under Rule 12(b)(6). Far from curing the deficiencies of the original complaint, the FAC underscores the same fatal flaws and raises additional grounds for dismissal. Fintiv cannot pursue its trade secret or federal RICO claims because the applicable statutes of limitations have long expired. Nor can Fintiv pursue its Georgia RICO claim, as the GTSA supersedes it. Furthermore, Fintiv has failed to adequately plead (1) its DTSA and GTSA claims because it has not identified any allegedly misappropriated trade secret with sufficient particularity, and (2) its RICO

claims because it fails to establish the requisite enterprise and predicate acts.

### A.  Fintiv's Trade Secret and Federal RICO Claims Are Time-Barred

Fintiv's trade secret and federal RICO claims come far too late.  The statute of limitations for each claim began to run when the underlying misappropriation or injury was discovered or should have been discovered through reasonable diligence. The DTSA bars claims three years after the misappropriation was or "should have been" discovered.  18 U.S.C. § 1836(d).  The GTSA statute is the same but runs for five years.  O.C.G.A. § 10-1-766.  And federal RICO claims must be brought within four years of "when the injury was or should have been discovered."  *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013) (cleaned up).

Fintiv filed this action on August 6, 2025.  But Fintiv ***discovered*** the purported misappropriation or injury no later than July 2020, when it requested leave to amend its patent complaint by relying on the same alleged facts it pleads now.  And Fintiv ***should have discovered*** the misappropriation much earlier:  In 2018, Fintiv filed the Patent Case and thus should have diligently investigated potential trade secret claims involving the same technology.  And as early as 2014, Fintiv's predecessor CorFire had access to all facts supporting Fintiv's present claim that Apple Pay incorporated

CorFire trade secrets at its launch. Thus, Fintiv's DTSA, GTSA, and federal RICO[3]

claims are time-barred because each applicable statute of limitations began to run

more than five years before Fintiv filed this suit.

             1.    <u>Fintiv Discovered the Alleged Misappropriation No Later than July 2020 When It Moved to Amend Its Patent Complaint.</u>

Because Fintiv's misappropriation claims are based on alleged facts that it

knew in July 2020, the statutes of limitations began to run no later than that date.

Those alleged facts are (1) that Apple Pay uses NFC and secure element technology

and has used it since its launch in 2014, FAC ¶¶ 113-17, 128; (2) that Apple met with

CorFire in 2011 and 2012, *id.* ¶¶ 66-77; and (3) that Apple hired formerly CorFire-

affiliated employees, *id.* ¶¶ 124-26.

Fintiv not only knew, but specifically relied on these alleged facts in July 2020

when it moved to amend its patent complaint. Apple Pay's alleged use of NFC and

secure element technology was already part of Fintiv's infringement case. *See* Dkt.

No. 1-1, 14:38-53. Fintiv also raised Apple's alleged meetings with CorFire and its

hiring of formerly CorFire-affiliated employees as newly discovered information to

try and justify adding a late willful infringement claim. *See* Dkt. No. 203, 35:11-

---

[3] As explained further in Section V.A.5, *infra*, the RICO "injury" here for limitations purposes **is** the underlying misappropriation. Thus, just as with the DTSA and GTSA claims, the RICO statute of limitations began when Fintiv discovered or should have discovered the misappropriation.

36:11 (summarizing Fintiv's bases for amending its complaint); *see also* Dkt. No. 139-1 (motion to amend). Fintiv's counsel had even apparently interviewed a former CorFire employee specifically about the Apple-CorFire meetings. *See* Dkt. No. 203, 52:3-11. These revelations, per Fintiv, led it to "fully appreciate" the "extent of the [Apple-CorFire] communications." *Id.*, 88:20-89:5; Section II.D, *supra*.

Fintiv was therefore not only aware in July 2020 of the allegations on which it now bases its claims, but also relied on them as evidence of Apple's supposedly willful use of Fintiv technology. It thus is implausible that Fintiv had not discovered the alleged misappropriation by then. And all these alleged facts were indisputably in Fintiv's possession. But that was more than five years ago, barring Fintiv's claims.

> 2.    Fintiv Should Have Discovered the Alleged Misappropriation When It Sued Apple in December 2018.

Although Fintiv discovered the alleged facts underlying its misappropriation claim no later than July 2020, it **should** have done so by no later than December 2018, when it filed the Patent Case against Apple on the same technology.

As summarized above, Fintiv alleged that Apple Pay infringed the '125 patent because it was part of a "mobile wallet application" with elements such as widgets, a Trusted Service Manager (TSM) system, a secure element, and storage of payment information on the secure element. *See* Section II.B, *supra* (quoting Dkt. No. 1-1 ('125 patent), 14:7-23, 14:39-53, 14:58-61). Fintiv now identifies the same elements to plead its misappropriation claims, alleging that Apple has "used and incorporated"

21

CorFire's trade secrets in Apple Pay because Apple Pay includes "the following elements, all of which were discussed in CorFire's 2012 presentations to Apple":

> (a) an NFC-enabled mobile wallet application; (b) a secure element; (c) an ability to store payment card information/credentials on the secure element chip; (d) widgets that represent a physical card and have a user interface; and (e) a trusted service manager and other technical and business aspects related to CorFire's implementation and practical use of the system.

FAC ¶ 128. But if Fintiv believed in 2018 that Apple Pay infringed its patent by incorporating these elements, it also should have investigated Apple's possible use of trade secrets involving those same elements, including any as-yet-unidentified "other technical and business aspects" Fintiv claims as misappropriated trade secrets. Instead, Fintiv filed this action seven years later, after the statutes of limitations ran.

### 3.   Fintiv, Through Its Predecessor-in-Interest CorFire, Should Have Discovered the Alleged Misappropriation When Apple Pay Launched in October 2014.

The statutes of limitations began to run even earlier, in October 2014, when Apple Pay launched. That is because CorFire (Fintiv's predecessor-in-interest) knew or should have known, at that time, every fact Fintiv pleads now to support its claim that Apple Pay incorporated CorFire trade secrets. FAC ¶¶ 12, 117.

In alleging that Apple Pay used CorFire trade secrets at the time of its launch, Fintiv points to the purported meetings between Apple and CorFire in 2011 and 2012 and Apple's public announcements regarding Apple Pay leading up to its U.S. launch. *Id.* ¶¶ 66-77, 113-17. But, as the disclosing party, CorFire was of course aware of

22

any meetings in which it allegedly disclosed trade secrets to Apple. In addition, it is implausible that CorFire was unaware of Apple's public statements regarding Apple Pay ahead of its 2014 launch, given that a related project was the alleged subject of those very meetings just two years before. *Id.* ¶¶ 66-77. Furthermore, Apple Pay marked the introduction of a product by a major technology company into the same field that CorFire supposedly led. *See id.* ¶ 64 ("CorFire was an industry-leading mobile commerce company that had developed mobile wallet technology products and services."). CorFire therefore likely knew, and certainly should have known, of Apple's announcement that Apple Pay would use "a groundbreaking NFC antenna design" and "a dedicated chip called the Secure Element," *id.* ¶ 113, two key aspects of the technology that Fintiv claims CorFire disclosed to Apple in 2012, *id.* ¶ 128.

Because reasonable diligence would have led CorFire to the same facts Fintiv pleads now, CorFire should have discovered the alleged misappropriation in 2014. As CorFire's successor-in-interest, Fintiv is subject to the same statute of limitations clock, which began to run at that time and expired long before Fintiv filed this action. *See, e.g.*, *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, No. 16-cv-33-LRR, 2017 WL 6210920, at \*7, n.4 (N.D. Iowa Dec. 8, 2017), *aff'd*, 920 F.3d 560 (8th Cir. 2019) (predecessor's knowledge of possible misappropriation began limitations clock); *E.T. Mfg. Co. v. Xomed, Inc.*, 679 F. Supp. 1082, 1087-88 (M.D. Fla. 1987) (same).

> ### 4. Fintiv's DTSA Claim Is Also Barred Because Fintiv Admitted to Discovering the Alleged Misappropriation in June 2022.

As a final nail in the coffin for Fintiv's DTSA claim, Fintiv expressly **admitted** to having discovered the alleged misappropriation in June 2022. In its emergency motion to reopen discovery, Fintiv identified the CorFire-Apple meetings mentioned in the FAC, as well as Apple's hiring of formerly CorFire-affiliated employees. *See* Dkt. No. 435, 2-3. To justify reopening discovery on the eve of trial, Fintiv noted that these events were relevant to "trade secret misappropriation." *Id.*, 9. Thus, even if Fintiv's clock started as late as the time of its emergency motion in 2022, that was over three years before this case, barring Fintiv's DTSA claim.

> ### 5. Fintiv's Allegations of Continuing Misappropriation or Later Acts of Racketeering Do Not Reset the Limitations Clock.

The applicable statutes of limitations began to run at the earliest time the alleged misappropriation or RICO injury was or should have been discovered. 18 U.S.C. § 1836(d); O.C.G.A. § 10-1-766; *Lehman*, 727 F.3d at 1330 (Claim begins "when the injury was or should have been discovered, regardless of whether or when the injury is discovered to be part of a pattern of racketeering.") (cleaned up).

For the DTSA and GTSA claims, it is immaterial that Fintiv alleges Apple's misappropriation is ongoing. *See* FAC ¶¶ 287-90, 310-11. That is because, for each statute of limitations, a "continuing misappropriation" can support only "a single claim of misappropriation." 18 U.S.C. § 1836(d); O.C.G.A. § 10-1-766. Here, each

allegation of misappropriation in the FAC after the supposedly improper acquisition of trade secrets from CorFire is simply a continuation of the initial misappropriation. In particular, as Fintiv puts it, Apple had to "reproduce, re-extract, re-install, re-copy, re-implement, and internally acquire again *the same trade secrets provided by Fintiv*" each time Apple Pay was launched in a new country or a new product version. FAC ¶ 16 (emphasis added); *see also id.* ¶¶ 12, 119-22, 150-52, 284. Thus, none of these later acts reset Fintiv's DTSA and GTSA clocks. *See Azima v. Del Rosso*, No. 1:20-cv-954, 2021 WL 5861282, at *8 (M.D.N.C. Dec. 10, 2021) (alleged posting of links to plaintiff's data in 2018 and 2019 were "continuing misappropriation" of original hacking of the data in 2016 for limitations purposes).

Similarly, for Fintiv's federal RICO claim, later events do not reset the clock unless they give "rise to a new and independent injury." *Lehman*, 727 F.3d at 1331; *Austin v. Grand Canyon Univ., Inc.*, No. 1:19-cv-03734-SCJ, 2020 WL 13526627, at *6 (N.D. Ga. May 11, 2020) (statute of limitations did not reset every time plaintiff paid defendant because each payment "was a continuing injury stemming from the alleged fraud which induced" the payments). Here, Fintiv alleges the predicates of wire fraud, trade secret theft, Computer Fraud and Abuse Act ("CFAA") violations, and National Stolen Property Act ("NSPA") violations. FAC ¶ 213. Thus, the clock started running when the misappropriation underlying the alleged trade secret theft was or should have been discovered. Later alleged acts of wire fraud or CFAA and

NSPA violations did not reset the clock because they are not new and independent from the theft: Fintiv's wire fraud theory is that Apple hid from business partners and the public the role of Fintiv's **trade secrets** in developing Apple Pay. *Id.* ¶¶ 168-74. Its CFAA theory is that Apple improperly accessed files containing those same **trade secrets**. *Id.* ¶¶ 184-88. And its NSPA theory is that Apple moved those **trade secrets** (as incorporated into Apple Pay, *id.* ¶¶ 191-96, or into digital files, *id.* ¶¶ 201-05) across state lines in violation of 18 U.S.C. § 2314, *id.* ¶¶ 190-206, or received, possessed, and concealed them in violation of 18 U.S.C. § 2315, *id.* ¶¶ 207-10.

In short, Fintiv cannot escape the applicable statutes of limitations by pleading later, allegedly improper acts that stem from the alleged initial misappropriation. Because the time has long passed since Fintiv should have brought its trade secret and federal RICO claims, the Court should dismiss them with prejudice.

### 6.    Fintiv Fails to Plead Equitable Tolling of the Applicable Statutes of Limitations Based on Fraudulent Concealment.

By accusing Apple of "concealment and obstruction" during discovery in the Patent Case, Fintiv appears to be arguing that the statutes of limitations should be tolled equitably due to alleged fraudulent concealment. *See* FAC ¶¶ 82-93. The FAC grossly mischaracterizes the Patent Case record, but even taking Fintiv's allegations as true, its pleading is insufficient.

To prove fraudulent concealment, Fintiv must show that (1) Apple "concealed the conduct complained of," and (2) that Fintiv "failed, despite the exercise of due

diligence on [its] part, to discover the facts that form the basis of [its] claim." *Premier Concrete LLC v. Argos N. Am. Corp.*, No. 1:20-cv-00307-SDG, 2021 WL 1209354, at *7 (N.D. Ga. Mar. 31, 2021); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 182 (1997) (plaintiff must show that it was "reasonably diligent in trying to discover [its] cause[s] of action"). But here, Fintiv did not ***fail*** "to discover the facts that form the basis of its claims." *Premier Concrete*, 2021 WL 1209354, at *9.

Again, Fintiv discovered the alleged bases for its misappropriation claim no later than 2020 when it relied on them to seek leave to amend its patent complaint. *See* Section V.A.1, *supra*. And with due diligence, Fintiv should have discovered those bases far earlier—in 2017 when it filed the Patent Case on the same technology or in 2014 when Apple Pay launched. Sections V.A.2-V.A.3, *supra*. Although Fintiv spends many paragraphs laying out its misguided version of the parties' discovery disputes in the Patent Case, it never says what was supposedly "conceal[ed]," FAC ¶ 93, that would otherwise have led it to timely bring its current claims. Moreover, while the discovery Fintiv sought did not occur before its Patent Case was dismissed, Fintiv still decided it had sufficient facts to file this case. Thus, accusations of concealment cannot toll the statutes of limitations; Fintiv ***did*** discover the alleged factual bases—and could have done so earlier—on its own. *See Premier Concrete*, 2021 WL 1209354, at *7; *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 463 (S.D.N.Y.), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) (no tolling where plaintiffs had failed to act "with

reasonable diligence in investigating the alleged wrongdoing").

## B.    Fintiv's Georgia RICO Claim Is Preempted by the GTSA

Because Fintiv's Georgia RICO claim is based on "predicate acts" arising from alleged trade secret misappropriation, it should be dismissed as preempted by the GTSA. The GTSA "supersede[s] conflicting tort, restitutionary, and other [state] laws" that provide "civil remedies for misappropriation of a trade secret." O.C.G.A. § 10-1-767(a). Fintiv's Georgia civil RICO claim is no exception. *See AmNet Esop Corp. v. CrossCountry Mortg., Inc.*, No. 2:23-cv-10-RWS, 2023 WL 9181488, at *18 (N.D. Ga. Dec. 18, 2023) (state RICO preempted by GTSA where plaintiff relied on "misappropriation (or theft) of trade secrets" as predicates).

In addition to trade secret theft, Fintiv's Georgia RICO claim is predicated on various forms of theft, computer trespass, and fraud. FAC ¶ 230. Critically, these predicate RICO acts are all themselves based on trade secret theft. The trade secrets are the "property" that Fintiv accuses Apple of stealing in its theft allegations and the "data" it says Apple accessed in its computer trespass allegations. *See id.* ¶¶ 243-54. Nor would there be anything false about Apple's claims that it "independently designed, developed, and engineered" Apple Pay, *see id.* ¶ 237, unless Apple did, in fact, incorporate stolen trade secrets (which it did not). Each predicate act is thus merely a different manifestation of the same underlying alleged misappropriation. *See AmNet*, 2023 WL 9181488, at *18-19 (predicates of theft and computer theft did

not circumvent preemption where trade secrets were the stolen property).

Fintiv's alleged injuries confirm that these supposed predicate acts collapse into its trade secret claims. Per Fintiv, Apple's racketeering activities led it to suffer (1) "loss of monies owed to Fintiv" for the use of its ***trade secrets*** and (2) "damage to Fintiv's reputation and goodwill" and "loss of business opportunities" caused by Apple's "failure to properly credit Fintiv for" the ***trade secrets***. FAC ¶ 276. Thus, the Georgia RICO claim is preempted and should be dismissed.

### C.    Fintiv Has Not Adequately Pled Its Trade Secret Claims

The FAC—Fintiv's second attempt to articulate its trade secrets—again fails to include the required specificity and only introduces further confusion as to what Fintiv alleges to be the trade secrets at issue. Fintiv must "allege sufficient facts to plausibly show a trade secret was involved and to give the defendant notice of the material it claims constituted a trade secret." *RoadSync, Inc. v. Relay Payments, Inc.*, No. 1:21-cv-3420-MLB, 2022 WL 4715656, at *2 (N.D. Ga. Sept. 30, 2022) (citing *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 848 (11th Cir. 2016)). It is thus not enough to refer to "broad categories of information" like specifications, roadmaps, financial affairs, or projections. *Id.* at *4, n.5 (collecting cases); *Ranger Env't Servs. LLC v. Foehl*, No. 1:23-cv-00297-KDM, 2023 WL 6931336, at *17 (S.D. Ala. Oct. 19, 2023) (further examples of broad categories). But that is exactly what Fintiv does, defining its trade secrets for its DTSA claim as follows:

29

> Fintiv's mobile wallet technology and trade secrets consist of technical ***designs, implementations, expertise, and know-how*** relating to the proprietary secure element and NFC-enabled mobile wallet technologies. . . . On information and belief, these trade secrets include the ***end-to-end technical information and implementation details*** of CorFire solutions that CorFire disclosed to Apple under an NDA. They further include ***confidential business strategies, implementation expertise, sequencing rules, operational insights, and integration techniques*** not disclosed in any patent and not publicly known.

FAC ¶ 280 (emphasis added); *see also id.* ¶ 303 (similar for GTSA).

As an initial matter, these are lists of both "mobile wallet technology and trade secrets." That is critical because Fintiv has sued Apple for infringing a patent (which is public information) on the same technology. *See* Sections II.A, II.B, IV.B.3, *supra*. That Fintiv negatively and tautologically defines a subset of the trade secrets as "not disclosed in any patent," FAC ¶ 280, does not supply the missing particularity.

Moreover, even if Fintiv argues that all of the above are its "trade secrets," it identifies only impermissibly broad categories: designs, implementations, expertise, know-how, technical information, business strategies, rules, insights, and techniques. *See id.* ¶¶ 280, 303; *RoadSync*, 2022 WL 4715656, at *4, n.5. These provide no notice as to what the trade secrets are or how Apple allegedly misappropriated them.

The rest of the FAC makes it even less clear what the alleged trade secrets are. For example, in the one place where Fintiv provides any semblance of specificity, it alleges that Apple Pay includes five technical features that supposedly derive from CorFire. FAC ¶ 128. But those features were already publicly known, for example

30

as part of the patent that Fintiv asserted against Apple. *See* Sections II.A, II.B, IV.B.3, *supra*. Fintiv also states that the trade secrets are "confidential files" for its DTSA claim, *id.* ¶ 288, while simultaneously insisting that those files are distinct from the trade secrets for its RICO claim, *id.* ¶ 189. This lack of clarity warrants dismissal.

Indeed, Fintiv's unspecific trade secret allegations reflect the more general "shotgun pleading" approach that plagues the FAC, in which each "claim for relief" opens by incorporating all earlier paragraphs by reference. FAC ¶¶ 142, 220, 279, 302. This Court has disapproved of that approach. *See Team Herschel, Inc. v. Scott Howell & Co., Inc.*, No. 1:24-cv-02859-TRJ, 2025 WL 1527072, at *1 (N.D. Ga. May 7, 2025) (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015)). It should do so again here.

### D.    Fintiv Has Not Adequately Pled Its RICO Claims

Fintiv's FAC fails to adequately allege two key elements of a RICO claim: (1) an enterprise that Apple operated and (2) a pattern of racketeering activity. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).[4] These and other elements of a civil RICO claim must be pled with specificity pursuant to Fed. R. Civ.

---

[4] *Cisneros* states elements of a federal RICO claim. Under O.C.G.A. § 16-14-4(a), a Georgia RICO claim does not require proof of an "enterprise." *Aquino v. Mobis Alabama, LLC*, 739 F. Supp. 3d 1152, 1173 (N.D. Ga. 2024). But because Fintiv ***does*** allege an enterprise, Apple analyzes its state claim under Section 16-14-4(b).

Pro. 9(b).  *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1233 n.20 (S.D. Fla. 2017)

("entire RICO claim" subject to Rule 9(b)); *Ambrosia Coal & Const. Co. v. Pages*

*Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) (civil RICO claims are a "breed of

fraud claims").  Fintiv struggles and fails to plead its RICO claims here because they

merely re-tread its trade secret claims.  Thus, the Court should dismiss with prejudice.

           1.    <u>Fintiv Fails to Plausibly Allege the Existence of an Enterprise.</u>

Because Fintiv claims that Apple is part of an association-in-fact enterprise,

FAC ¶¶ 26, 162, it must allege facts that plausibly show the enterprise has, among

other things, a "common purpose."  *Cisneros*, 972 F.3d at 1211.

Fintiv does not adequately allege a common purpose.  According to Fintiv, the

"Apple Pay Payment Enterprise" comprises "Apple, the Card Issuers, and Payment

Networks, and others" who came together with the common purpose of "processing

contactless payment transactions in interstate and foreign commerce through Apple

Pay for fees."  *See* FAC ¶¶ 24, 150.  But "[a]n abstract common purpose, such as a

generally shared interest in making money, will not suffice."  *Cisneros*, 972 F.3d at

1211.  Enterprise members must have "shared the purpose of enriching themselves

through a particular ***criminal*** course of conduct."  *Id.* (emphasis added).  There is

nothing criminal about working together to process transactions through Apple Pay.

Indeed, to monetize its alleged trade secrets, Fintiv, too, would need to work with

card issuers and payment networks in the same ordinary partnerships.  *See Amnet*,

2023 WL 9181488, at *16 (common purpose requires "meeting of the minds").

Elsewhere in the FAC, Fintiv defines the alleged common purpose differently: "enabling Apple to control and monetize mobile-wallet technologies through its closed ecosystem, while concealing the true origins of the technology and excluding competing wallet providers from access to Apple devices." FAC ¶ 223. But non-Apple enterprise members could not have shared in this alleged common purpose if they were never aware of the supposed "true origins" of Apple Pay. And Fintiv does not plead any such awareness. At most, it alleges that these members "appear to have acted in reckless disregard of Fintiv's intellectual property rights," *id.* ¶ 37, not that they knowingly helped Apple conceal the alleged infringement of those rights. Not only is "reckless disregard" insufficient for the "meeting of the minds" needed for a common purpose, *see Amnet*, 2023 WL 9181488, at *16, but Fintiv's accusation is wholly conclusory. The FAC alleges that the other members failed to ensure that Apple was *not* using Fintiv technology, but no facts to establish a duty to do so. FAC ¶ 37. And while Fintiv contends that the alleged enterprise members should have reacted to "credible allegations asserting that Apple misappropriated trade secrets," it never identifies those allegations or when they were published. *Id.* ¶ 38. Fintiv thus falls far short of the heightened pleading standard for civil RICO claims.

Worse, Fintiv's other allegations contradict its accusation of reckless disregard on behalf of the non-Apple alleged enterprise members. Fintiv alleges that by

claiming to have developed Apple Pay on its own, Apple misled its "partners," *id.* ¶ 14, including the very "issuing banks, payment processors, [and] card networks" it identifies as enterprise members, who supposedly would not have partnered with Apple but for Apple's "false statements," *id.* ¶¶ 171-73. But that would mean the non-Apple enterprise members did not know of the alleged misconduct and could not have acted in reckless disregard of it, let alone with a common illegal purpose.

The Eleventh Circuit has affirmed dismissal on similar facts in *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1352-55 (11th Cir. 2016). There, the plaintiffs alleged that Spirit was part of an enterprise with technology and public relations vendors, with the common purpose of increasing Spirit's revenue through a fraudulent scheme (misrepresenting fees to customers). *Id.* at 1352. But that complaint did not permit a plausible inference that the vendors were involved with the misrepresentation. *Id.* at 1353. Instead, the vendors had engaged in "wholly innocent activity undertaken as a course of regular business," such as helping Spirit "set up the ticket reservation system for [its] website." *Id.* Thus, the alleged enterprise "engaged in no more than a series of legitimate commercial transactions." *Id.* at 1354-55; *see also Allen v. First Unum Life Ins. Co.*, No. 2:18-cv-69-FtM-99MRM, 2019 WL 1359480, at *4 (M.D. Fla. Mar. 26, 2019) (dismissing claims based only on conclusory statements that the enterprise members were aware of defendant's scheme). That is exactly the case here. The only shared purpose between the alleged enterprise members was a

series of legitimate commercial transactions, which cannot sustain a RICO claim. The Court should therefore dismiss Fintiv's RICO claims with prejudice.

        2.    <u>Fintiv Fails to Plausibly Allege a Pattern of Racketeering Activity.</u>

The RICO element of a "pattern" requires at least two predicate acts. *Cisneros*, 972 F.3d at 1211. Because none of Fintiv's alleged predicates are viable, the Court should dismiss the RICO claims with prejudice.

***Trade Secret Theft:*** Fintiv cites trade secret theft as a predicate to its RICO claims. FAC ¶¶ 178-83, 266-71. But Fintiv's failure to adequately identify any trade secrets, *see* Section V.C, *supra*, disqualifies trade secret theft as a predicate act.

***Wire Fraud:*** Fintiv accuses Apple of fraudulently representing to the public that it developed Apple Pay, and that this fraud injured Fintiv. FAC ¶¶ 169-70, 255-57. But civil RICO "injuries must be a direct result of the alleged racketeering activity." *Halpin v. Crist*, 405 F. App'x 403, 405-06 (11th Cir. 2010) (cleaned up). Fintiv must show that Apple's "predicate acts of racketeering [were] the proximate and direct cause of [its] alleged injuries." *Id.* For a predicate of fraud, Fintiv must show that actual reliance on the false statement injured Fintiv. *Ray*, 836 F.3d at 1350.

Here, Fintiv alleges that Apple's false statements (1) caused reputational harm because it was "deprived of the business opportunities that would come from proper recognition" for Fintiv's "role in developing and enabling Apple Pay's mobile wallet functionality" and (2) concealed Apple's alleged theft of intellectual property from

Fintiv, depriving it of "just compensation."  FAC ¶¶ 170, 263.  But, as pled, the fraud was not the direct, let alone proximate, cause of these "injuries"—Fintiv alleges that Apple tried to deceive the general public and Apple's business partners, not Fintiv.

On harm to reputation and business, Fintiv alleges that "banks and networks would have evaluated alternative integration strategies, pursued competitive wallet frameworks, or sought licensing arrangements directly with Fintiv" had Apple given Fintiv the credit it demands.  FAC ¶ 173.  But this is conclusory—Fintiv fails to point to a single lost business opportunity, let alone link it to the only examples of alleged fraud in the FAC (two press releases and a podcast appearance in 2023-24).  *See id.* ¶ 170.  And even if taken as true, Fintiv's conclusory allegation admits that the banks and networks might still not have worked with Fintiv, and thus fails to establish proximate cause.  *See Ray*, 836 F.3d at 1351 (affirming civil RICO dismissal where plaintiffs "pled nothing even remotely suggesting that they—or anyone else for that matter—would have acted at all differently" absent the alleged misrepresentations).

Similarly, Fintiv fails to explain how any alleged wire fraud prevented it from discovering Apple's alleged theft of intellectual property.  In fact, this is logically impossible because Fintiv had already discovered the supposed theft by the time of the allegedly fraudulent statements in 2023 and 2024—five or six years after Fintiv sued Apple for patent infringement, accusing Apple Pay.  And if anything, Apple's public statements about having developed the technology that Fintiv claims for itself

should have *alerted* Fintiv to the alleged theft.  In addition, the "just compensation" Fintiv claims it could have pursued had it discovered Apple's "theft" has nothing to do with fraud; as pled, it would be the *trade secret misappropriation*, not the false statements, that proximately caused Fintiv's loss of compensation for its technology.

Thus, wire fraud cannot qualify as a predicate act for Fintiv's RICO claims.

*False Statements:*  For its state RICO claim, Fintiv alleges that Apple made "false, material statements within the meaning of O.C.G.A. § 16-10-20." FAC ¶ 234. But Fintiv fails to specifically identify any false statement, identifying only broad and vague categories like statements "in connection with regulatory inquiries, public filings" or "designed to influence the decisions of financial institutions, merchants, and payment networks." *Id.* ¶¶ 236-39.  This fails the heightened pleading standard under Rule 9(b) because Fintiv makes no attempt to identify what exactly Apple said, when, how, and to whom. *See Ray*, 836 F.3d at 1351 n.2 (Rule 9(b) requires plaintiffs to identify the "precise statements . . . purported to be fraudulent" and when and how they were communicated to the victim of the fraud, "among other salient details").

Moreover, Section 16-10-20 governs false statements made in a matter that is in "the jurisdiction of" a government "department or agency" in Georgia.  Alleging only generally that financial institutions who received Apple's false statements were subject to regulation by state agencies, FAC ¶¶ 236-40, Fintiv fails to identify any specific government matter to implicate Section 16-10-20.  Nor does it identify any

injury flowing from the alleged misrepresentation.  *See Kearney v. Oppenheimer & Co., Inc.*, 915 S.E.2d 709, 715-16 (2025), *cert. denied* (Sept. 25, 2025) ("proximate-cause" requires that "injury flowed directly from" predicate acts) (cleaned up).

Fintiv thus fails to plead a false statement predicate under Section 16-10-20.

***Computer Theft and Trespass Predicates:***  Fintiv accuses Apple of violating the CFAA, FAC ¶¶ 184-89, and analogous Georgia statutes, *id.* ¶¶ 247-51.

Fintiv's CFAA theory is that Apple exceeded authorized access on ***its own systems*** by accessing files CorFire put there, but for a purpose beyond what had been agreed upon. *Id.* ¶¶ 185-86.  Exceeding authorized access under the CFAA, however, means accessing "particular areas of [a] computer," such as files, "that are off limits." *Van Buren v. United States*, 593 U.S. 374, 396 (2021).  If a defendant had legitimate access to the files, its reason for accessing them is irrelevant.  *Id.*  Here, Fintiv cannot dispute that Apple had legitimate access to files that CorFire had uploaded to Apple's share site ***for Apple's review***.  Thus, there is no RICO-predicate CFAA violation.

Meanwhile, "computer theft" and "computer trespass" under O.C.G.A. § 16-9-93(a)-(b) require "us[ing] a computer or computer network with knowledge that such use is without authority."  The phrase "without authority" means "exceed[ing] any right or permission granted by ***the owner of the computer or computer network***." O.C.G.A. § 16-9-92(18).  But Apple is the owner of the computer system in question. Apple could not have used its own systems without permission from itself.  Thus,

Fintiv's conclusory and self-defeating allegations cannot serve as a RICO-predicate violation of Section 16-9-93.  *See* FAC ¶¶ 247-51.

*Stolen Property Predicates:*  Finally, Fintiv fails to establish RICO predicates under the NSPA and state statutes regarding stolen property.

Fintiv first alleges that Apple transported "stolen property" across state lines and received, possessed, stored, and used such property in violation of the NSPA. FAC ¶¶ 191, 207.  But as alleged, the property in question is "intellectual property" and "confidential mobile-wallet technology."  These are not "stolen property" under the NSPA, which prohibits the transport of "goods, wares, merchandise, securities, or money," not intellectual property or abstract "technology."   18 U.S.C. § 2314. Nor does using intellectual property in physical objects like iPhones bring it within the scope of the Act.  *See Dowling v. United States*, 473 U.S. 207, 216 (1985) (requiring "*physical identity* between the items unlawfully obtained and those eventually transported") (emphasis added); *see also Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1147-48 (E.D. Mo. 2007), *vacated in part on other grounds*, No. 4:05-cv-01108 ERW, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007) ("intangible intellectual property did not fall within the [NSPA's] ambit").

Even if Fintiv calls "[d]igitally stored files, data compilation, and electronic documents" the stolen property, *see* FAC ¶ 201, it misreads the NSPA, under which a stolen item must be in tangible form "at the time of the theft."  *U.S. v. Aleynikov*,

676 F.3d 71, 78 (2d Cir. 2012). The FAC alleges that Apple "copied, downloaded, retained, redistributed, and internally transported" digital files, FAC ¶ 201, but does not show how these acts involved the files being in a physical form. That each file at some point "existed in a fixed, material form stored on a physical server," *id.* ¶ 200, does not convert the electronic transmission of those files between servers across state lines into the transfer of tangible stolen property under the NSPA. *See U.S. v. Yijia Zhang*, 995 F. Supp. 2d 340, 350 (E.D. Pa. 2014) (digital files must have been stolen "while in a tangible form" to be stolen property and "[b]its transmitted over the Internet [we]re intangible information falling outside the NSPA's ambit"); *see also Aleynikov*, 676 F.3d at 78 ("The later storage of intangible property on a tangible medium does not transform the intangible property into a stolen good.").

As for Fintiv's state RICO stolen property predicates, none are pled with any particularity. *See* FAC ¶¶ 243-46, 253-54, 272-73. Stating in conclusory fashion that Apple has violated the relevant Georgia statutes, Fintiv does not even mention the elements of these predicates, let alone identify facts to plead them. *See id.*

Thus, Fintiv fails to plead any viable predicate act to support is RICO claims. The Court should dismiss those claims with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, Apple requests that this Court transfer this action to Judge Albright, or in the alternative dismiss all of Fintiv's claims with prejudice.

Dated:  December 23, 2025        Respectfully submitted,

*/s/ Kurt R. Erskine*
Kurt R. Erskine
GA Bar No. 249953
POLSINELLI PC
1200 West Peachtree Street NW,
Suite 1100
Atlanta, GA 30309
Tel: (404) 253-6033
Email: kerskine@polsinelli.com

Shaelyn K. Dawson (admitted *pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Email: shaelyndawson@mofo.com

*Counsel for Defendant*
APPLE INC.

## **RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that this document has been prepared with

one of the font and point selections approved by the Court in Local Rule 5.1(C).


*/s/ Kurt R. Erskine*
Kurt R. Erskine

*Counsel for Defendant*
APPLE INC.

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this day a copy of the foregoing was filed and served using the Court's CM/ECF system which will send notification of such filing to ECF registered participants.

Dated:  December 23, 2025                    */s/ Kurt R. Erskine*
                                                         Kurt R. Erskine

                                                         *Counsel for Defendant*
                                                         APPLE INC.