IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FINTIV, INC., a Delaware Corporation<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California Corporation,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No.: 1:25-cv-04413-TRJ |

**PLAINTIFF FINTIV, INC.'S RESPONSE IN OPPOSITION TO APPLE INC.'S MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(A) OR IN THE ALTERNATIVE TO DISMISS UNDER RULE 12(B)(6) FINTIV'S FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

III. APPLE'S MOTION TO TRANSFER SHOULD BE DENIED ........ 6

A. Legal Standard Governing Transfer ........ 6

B. The Convenience of Witnesses Disfavors Transfer ........ 7

C. The Location of Documents and Convenience of Parties Are Neutral Factors ........ 9

D. Fintiv's Choice of Forum is Entitled to Deference and Disfavors Transfer ........ 10

E. The Locus of Operative Facts Disfavors Transfer ........ 11

F. The Ability to Compel Unwilling Witnesses Disfavors Transfer ........ 11

G. The Relative Means of the Parties is Neutral ........ 12

H. This Forum's Familiarity with Georgia Law Disfavors Transfer ........ 12

I. Trial Efficiency and the Interests of Justice Disfavor Transfer ........ 13

IV. APPLE'S MOTION TO DISMISS SHOULD BE DENIED ........ 15

A. Motion to Dismiss Legal Standard ........ 15

B. Fintiv Timely Pled Its Trade Secret and Federal RICO Claims ........ 17

1. Fintiv Could Not Reasonably Have Discovered Apple's Trade Secret Misappropriation and Racketeering Earlier ........ 19

a. Fintiv Lacked Sufficient Knowledge of Apple's Trade Secret Misappropriation and Racketeering in July 2020 and June 2022 ........ 19

b. Fintiv Lacked Knowledge of Its Trade Secret Claims When Acquiring CorFire and Filings Its Patent Claims ........ 20

c. Fintiv Only Recently Formed a Reasonable Belief of Apple's Trade Secret Misappropriation ........................................................21

2. Apple Fraudulently Concealed Its Trade Secret Misappropriation and Racketeering........................................................................23

3. Fintiv Also Alleges Independent Acts of Misappropriation and Racketeering Within Three Years of the Complaint ...............................24

C. Fintiv's Georgia RICO Claim is Not Preempted by the GTSA.................25

D. Fintiv Has Adequately Pled Its Trade Secret Claims.................................27

E. Fintiv Has Adequately Pled Its RICO Claims ..........................................28

1. Fintiv Alleges the Existence of an Enterprise........................................29

2. Fintiv Adequately Alleges a Pattern of Racketeering Activity ..............31

V. CONCLUSION..........................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABB Turbo Sys. AG v. Turbousa, Inc.*,
774 F.3d 979 (Fed. Cir. 2014) ....................21

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987) ....................17

*AirWatch LLC v. Mobile Iron, Inc.*,
2013 WL 4757491 (N.D. Ga. Sep. 4, 2013) ....................27

*Allen v. First Unum Life Ins. Co.*,
2019 WL 1359480 (M.D. Fla. Mar. 26, 2019) ....................30

*Andritz Inc. v. M&G Finanziaria S.r.L*,
2016 WL 1109123 (N.D. Ga. Mar. 22, 2016) ....................28

*Atl. Rsch. Mktg. Sys., Inc. v. Troy*,
659 F.3d 1345 (Fed. Cir. 2011) ....................8

*AWP, Inc. v. Henry*,
2020 WL 6876299 (N.D. Ga. Oct. 28, 2020) ....................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................15, 16

*Bibb Cnty. Sch. Dist. v. Dallemand*,
2019 WL 1519301 (M.D. Ga. Apr. 8, 2019) ....................23

*Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*,
2010 WL 11601332 (N.D. Ga. Sep. 1, 2010) ....................38, 39

*BRP Colleague, Inc. v. Gillen*,
2023 WL 3641954 (N.D. Ga. Mar. 7, 2023) ....................28

*Cabello v. Fernandez-Larios*,
402 F.3d 1148 (11th Cir. 2005) ....................23

*Candy Craft Creations, LLC v. Gartner*,
2015 WL 1541507 (S.D. Ga. Mar. 31, 2015) ....................26

*Omar ex rel. Cannon v. Lindsey*,
334 F.3d 1246 (11th Cir. 2003) ....................................................................17

*Capital Inventory, Inc. v. Green*,
2022 WL 4283205 (N.D. Ga. Mar. 29, 2022) ............................................25, 26

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) ....................................................................29

*Dowling v. United States*,
473 U.S. 207 (1985)........................................................................................36

*DuCom v. State*,
654 S.E.2d 670 (Ga. Ct. App. 2007)...............................................................36

*Faillace v. Columbus Bank & Tr. Co.*,
605 S.E.2d 450 (Ga. Ct. App. 2004)...............................................................31

*FTI Consulting, Inc. v. Secretariat Advisors, LLC*,
2025 WL 756024 (N.D. Ga. Mar. 7, 2025) .......................................................26

*Gilbert-Daniels v. Lions Gate Ent. Corp*.,
2023 U.S. Dist. LEXIS 90524 (N.D. Ga. Mar. 20, 2023) ..........................7, 8, 10

*Hill v. White*,
321 F.3d 1334 (11th Cir. 2003) ....................................................................16

*England v. ITT Thompson Indus., Inc.*,
856 F.2d 1518, 1520 (11th Cir. 1988) ...............................................................7

*Kolodziej v. Mason*,
2011 U.S. Dist. LEXIS 54562 (N.D. Ga. May 20, 2011)...............................7, 8

*Lawrence Holdings, Inc. v. ASA Int'l, Ltd.*,
2014 WL 5502464 (M.D. Fla. Oct. 30, 2014) ..................................................24

*Lechter v. Aprio, LLP*,
565 F. Supp. 3d 1279 (N.D. Ga. 2021)...........................................................16

*Leitner v. Morsovillo*,
2021 WL 2669547 (W.D. Mo. June 29, 2021)..................................................35

*Maiz v. Virani*,
253 F.3d 641 (11th Cir. 2001) ......................................................................17

*Martinez-Lopez v. GFA Ala. Inc.*,
797 F. Supp. 3d 1309 (N.D. Ga. 2025)...........................................................16, 34

*Massey, Inc. v. Moe's S.W. Grill, LLC*,
565 F. App'x 821 (11th Cir. 2014)...................................................................18

*One Stop Deli, Inc. v. Franco's, Inc.*,
1993 WL 513298 (W.D. Va. Dec. 7, 1993).......................................................38

*Phosphorus Free Water Sols., LLC v. Ferrate Sols., Inc.*,
2022 WL 22987308 (M.D. Fla. Sep. 1, 2022)...................................................18

*Pinnacle Peak Priv. Client Grp., LLC v. Keystone Cap. Partners, Inc.*,
2022 U.S. Dist. LEXIS 20537 (N.D. Ga. Jan. 5, 2022).....................................13

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 241 (1981).................................................................................13

*Porex Corp. v. Haldopoulos*,
284 Ga. App. 510 (2007) ............................................................................18, 20

*In re Ricoh Corp.*,
870 F.2d 570 (11th Cir. 1989) .....................................................................6, 10

*Rowe v. Neighborhood Reinvestment Corp.*,
2025 U.S. Dist. LEXIS 211193 (N.D. Ga. Oct. 27, 2025) ...................................6

*Ruiz v. Sewon Am., Inc.*,
766 F. Supp. 3d 1251 (N.D. Ga. 2025)...........................................................16, 17

*Schoenbaum v. E.I. Dupont De Nemours & Co.*,
517 F. Supp. 2d 1125 (E.D. Mo. 2007..........................................................36, 37

*Se. Ready Mix, LLC v. Argos N. Am. Corp.*,
2018 WL 8263138 (N.D. Ga. Aug. 22, 2018) ....................................................23

*SED, Inc. v. Seven Creeks Ent., LLC*,
2010 U.S. Dist. LEXIS 157454 (N.D. Ga Oct. 27, 2010) ..................................12

*Stewart-Jackson Pharmacal, Inc. v. River's Edge Pharms., LLC*,
2010 WL 11602697 (N.D. Ga. Sep. 24, 2010).....34

*TexDoor, LLC v. Samford*,
2025 WL 2844775 (M.D. Ga. Oct. 7, 2025).....27

*Thompson v. State*,
440 S.E.2d 670 (Ga. 1994).....30, 31

*Turk v. Morris, Manning & Martin, LLP*,
593 F. Supp. 3d 1258 (N.D. Ga. 2022).....31, 32

*U.S. v. Alavi*,
2008 WL 1971391 (D. Az. May 2, 2008).....37

*U.S. v. Aleynikov*,
676 F.3d 71 (2d Cir. 2012).....36

*U.S. v. Riggs*,
739 F. Supp. 414 (N.D. Ill. 1990).....37

*U.S. v. Yijia Zhang*,
995 F. Supp. 2d 340 (E.D. Pa. 2014).....37

*Van Buren v. United States*,
593 U.S. 374 (2021).....35

*Vero Fin. Techs., Inc. v. Maddox*,
2024 WL 2928536 (N.D. Ga. June 10, 2024).....28

*Ward v. Figure Lending, LLC*,
2023 U.S. Dist. LEXIS 173701 (N.D. Ga. June 21, 2023).....11

*Weissman v. Cheokas*,
2019 WL 13099203 (M.D. Ga. Sep. 11, 2019).....32

*Weissman v. Williams*,
2017 WL 11404587 (M.D. Ga. Sep. 29, 2017).....18

*Williams v. Receivable Recovery Servs., LLC*,
2017 U.S. Dist. LEXIS 219683 (N.D. Ga. July 27, 2017).....12

*Zap Cellular, Inc. v. Weintraub*,
2022 WL 4325746 (E.D.N.Y. Sep. 19, 2022) ....................35

**Statutes**

18 U.S.C. § 1836 ....................17

18 U.S.C. § 1893 ....................27

18 U.S.C. § 1961 ....................32

18 U.S.C. § 1962 ....................29

18 U.S.C. § 2314 ....................36

28 U.S.C. § 1404 ....................6, 7

O.C.G.A. § 10-1-761 ....................28

O.C.G.A. § 10-1-766 ....................16

O.C.G.A. § 16-8-3 ....................38

O.C.G.A. § 16-8-4 ....................39

O.C.G.A. § 16-8-7 ....................40

O.C.G.A. § 16-9-93 ....................36

O.C.G.A. § 16-14-4 ....................29

**Other Authorities**

Fed. R. Civ. P. 8 ....................16, 27

Fed. R. Civ. P. 9(b) ....................16, 34, 38

Fed. R. Civ. P. 12(b)(6) ....................15, 16, 17

Plaintiff Fintiv, Inc. ("Fintiv" or "Plaintiff") respectfully submits this response in opposition to Defendant Apple Inc.'s ("Apple" or "Defendant") Motion to Transfer Under 28 U.S.C. § 1404(a) or in the Alternative to Dismiss Under Rule 12(b)(6) Fintiv's First Amended Complaint (Dkt. 36; "Motion" or "Mot.").

## I. INTRODUCTION

Apple's Motion seeks to relocate this action to a forum with no meaningful connection to the operative misconduct, while simultaneously asking the Court to disregard well-pleaded factual allegations that, taken as true, plausibly establish Apple's liability under federal and Georgia law. Neither request is supported by the law.

First, Apple cannot meet its heavy burden under 28 U.S.C. § 1404(a). This case does not belong in the Western District of Texas ("WDTX"). The gravamen of Fintiv's claims concern Apple's misappropriation of confidential information from a Georgia-based company that helped create the technology in Georgia. The misappropriation occurred despite an NDA that governed disclosures with CorFire (Fintiv's predecessor) personnel located in this District, followed by years of concealment and exploitation. Key non-party witnesses include former CorFire personnel with direct knowledge of the disclosures and misuse at issue who are subject to this Court's compulsory process. By contrast, Apple identifies no relevant witnesses, documents, or operative facts tied to WDTX. Apple's reliance on a prior

patent case that is currently on appeal to manufacture a Texas nexus is legally irrelevant and factually wrong. Because Georgia has a substantial connection to the misconduct alleged, Fintiv's forum choice is entitled to deference, and the convenience, compulsory process, governing law, and interests of justice all weigh against transfer, Apple's transfer motion should be denied.

Second, Apple's Rule 12(b)(6) arguments improperly ask the Court to resolve factual disputes, draw inferences against Fintiv, and impose pleading burdens that exceed Rules 8 and 9(b). The Complaint pleads, with extensive factual detail, a decade-long scheme in which Apple induced disclosure of proprietary mobile-wallet technology under the false pretense of a partnership, misappropriated that technology to develop Apple Pay, concealed its theft through deceptive public and private communications, and repeatedly re-used and reengineered the stolen technology to, with the aid of its other Enterprise members, entrench its dominance in the mobile payments market. Those allegations state plausible claims for federal RICO, Georgia RICO, and trade secret misappropriation under both the DTSA and GTSA.

Apple's statute of limitations arguments fail because the Complaint plausibly alleges that facts necessary to learn of the misappropriation and racketeering took place within the limitations periods, alternatively should be tolled, or involve independent acts of misappropriation and racketeering that are inherently fact-

intensive and not suitable for resolution on a motion to dismiss. Apple's preemption arguments fail because Fintiv's Georgia RICO claim is predicated on conduct that is independent of the trade secret theft alone, including wire fraud, false statements, computer trespass, and theft offenses. And Apple's insistence that Fintiv has not sufficiently disclosed misappropriation is contrary to settled law because Fintiv identified specific technical information outside of the public patent disclosures and how that information was conveyed to Apple.

In short, the law does not permit transfer to a forum with no meaningful connection to the dispute just because Apple likes a particular judge, nor does it permit dismissal of a detailed complaint that plausibly alleges racketeering and trade secret theft spanning more than a decade. The Motion should be denied.

## II. FACTUAL BACKGROUND

The Complaint (Dkt. 33, the "Complaint" or "AC") details at least six meetings in 2011-2012 where Apple, under the guise of partnering with CorFire, gained access to proprietary details of CorFire's secure element and mobile-wallet capabilities. AC ¶¶66, 129. These meetings were subject to non-disclosure agreements ("NDA"), and CorFire's intellectual property was identified as confidential proprietary information and trade secrets. AC ¶¶66, 74. Instead of partnering with CorFire to develop the mobile payment business—as Apple had convinced CorFire was its intent—Apple stole Corfire's proprietary technology and

trade secrets. AC ¶77, 124-30.

During 2013 and 2014, Apple used Fintiv's misappropriated trade secrets to help develop Apple Pay. AC ¶¶94-95. At or around the same time, Enterprise Members devoted large teams of employees to help Apple create the secure digital token system to manage the payment transactions and enable cardholders to make secure payments on Apple products through contactless payment terminals. AC ¶¶95-112.

On October 20, 2014, Apple launched Apple Pay using CorFire's proprietary Near Field Communication ("NFC") and secure element mobile wallet technology and trade secrets. AC ¶¶77, 117, 137-41. Nearly overnight, Apple Pay became a widely accepted payment method aided by the Enterprise's tightly coordinated approach in its development, rollout, and marketing. AC ¶¶105-12.

On December 17, 2014, Fintiv, formerly known as Mozido, Inc., acquired a majority ownership stake in CorFire. AC ¶¶63-65. Fintiv completed its acquisition of CorFire in September 2015. AC ¶65. One month prior, in August 2015, Apple hired away CorFire's key personnel involved in the 2011-2012 meetings who still had duties of confidentiality and nondisclosures concerning CorFire's mobile wallet technology and trade secrets. AC ¶¶125-26.

In December 2018, Fintiv brought a patent infringement lawsuit against Apple in the WDTX concerning allegations of Apple's infringement of mobile-wallet

functionality relating to the provisioning and management of contactless payment credentials. AC ¶¶56, 78. The patent litigation did not involve federal or state RICO claims, federal or state trade secret misappropriation claims, nor the misconduct alleged here. AC ¶56.

By the Spring of 2023, after Apple repeatedly refused to comply with court orders in the patent litigation regarding discovery about its pre and post Apple Pay launch dealings with CorFire, Fintiv had sufficient knowledge of Apple's trade secret misappropriation and racketeering activities to bring claims and initiated this action in August 2025. AC ¶¶83-93.

During the patent case, Apple sought transfer arguing that "[t]he research, design, development, implementation, and product marketing of Apple Wallet are all centered in NDCA," (Ex. A at 1),[1] and that "Fintiv does not appear to have been involved in the development of the patent-in-suit" and "is unlikely to have many relevant witnesses or documents in this District or anywhere." *Id*. After its transfer motion was denied, Apple petitioned the Federal Circuit for a writ of mandamus, arguing: (1) "Apple's witnesses and documents [] are in the Northern District of California," (2) "Apple's Austin campus has no connection to the accused technology," (3) "Fintiv has few sources of proof in – and a tenuous connection to –

[1] Citations to "Ex. _" herein are to exhibits attached to the accompanying declaration of Paul G. Williams.

Texas,"[2] and (4) "the accused technology was developed" in NDCA." (Ex. B at 8.) The Federal Circuit denied Apple's petition.

In the patent case, after initially granting summary judgment in Apple's favor, the trial court was reversed by the Federal Circuit. On remand, and on the eve of trial, the trial court granted Apple partial summary judgment. Rather than try the remaining independent claim, Fintiv elected to dismiss it and appeal the trial court's grant of summary judgment. Days after the patent case was dismissed, Fintiv commenced this action by filing a 72-page complaint.

## III. APPLE'S MOTION TO TRANSFER SHOULD BE DENIED

### A. Legal Standard Governing Transfer

In the Eleventh Circuit, a plaintiff's choice of forum is given great weight and a party moving under § 1404(a) bears a heavy burden demonstrating the propriety of transfer. *In re Ricoh Corp*., 870 F.2d 570, 573 (11th Cir. 1989); *see also Rowe v. Neighborhood Reinvestment Corp.*, 2025 U.S. Dist. LEXIS 211193, *13 (N.D. Ga. Oct. 27, 2025) (holding defendant failed to overcome its heavy burden to overrule Plaintiff's choice of forum).

"[T]hree general criteria determine whether a transfer is appropriate: (1) the

[2] No Fintiv employees were involved in negotiations between CorFire and Apple. Fintiv's lack of institutional knowledge regarding Apple's trade secrets misappropriation was a factor (along with Apple's discovery misconduct) enabling Apple to conceal its misconduct for a decade.

convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Kolodziej v. Mason*, 2011 U.S. Dist. LEXIS 54562, *19 (N.D. Ga. May 20, 2011) (citing *England v. ITT Thompson Indus., Inc*., 856 F.2d 1518, 1520 (11th Cir. 1988)). These general considerations can include additional factors: "(1) the location of relevant documents and the relative ease of access to sources of proof, (2) the locus of operative facts, (3) the availability of process to compel the attendance of unwilling witnesses, (4) the relative means of the parties, (5) a forum's familiarity with the governing law, and (6) trial efficiency and the interests of justice, based on the totality of the circumstances." *Kolodziej*, 2011 U.S. Dist. LEXIS 54562, *20.

### B. The Convenience of Witnesses Disfavors Transfer

"The convenience of the witnesses is one of the most important factors in evaluating a motion to transfer venue, with the main focus on 'key witnesses,'" especially non-party witnesses. *Id.* (citing *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) ); *see also Gilbert-Daniels v. Lions Gate Ent. Corp*., 2023 U.S. Dist. LEXIS 90524, *6 (N.D. Ga. Mar. 20, 2023) ("The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses.") (citation omitted). Moreover, because "[p]arty witnesses are presumed to be willing to testify in a different forum, while nonparty witness[es] are not," non-party witnesses'

convenience is given greater weight when evaluating the forum's convenience. *Kolodziej*, 2011 U.S. Dist. LEXIS 54562, at *20-21.

Apple identifies three categories of non-party witnesses: witnesses discussed in the Complaint, at least two of whom reside in Georgia, but none of which live in Texas; NXP employees who were residents of Texas and were potentially relevant to the patent infringement case but have no germane testimony to offer here; and "the card issuers and payment networks Fintiv accuses of participating in Apple's RICO enterprise." Mot. 11-12. Of the alleged RICO enterprise members, Apple maintains that none reside in this District but fails to establish that any reside in WDTX. *Id*. Nor does Apple identify any relevant witness for whom this forum would be inconvenient. *See Gilbert-Daniels*, 2023 U.S. Dist. LEXIS 90524, at *6.

Apple now inflates the significance of the NXP witnesses but ignores that, when seeking to transfer the patent case out of the WDTX, they argued NXP did not have any relevant witnesses in the WDTX. Mot. 11-12. Apple's "same facts" assertion is also wrong. It is black-letter law that trade secret misappropriations are not analogous to patent infringement claims. *Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1357 (Fed. Cir. 2011) ("A trade secret is secret. A patent is not. That which is disclosed in a patent cannot be a trade secret.") (citations omitted). The patent case concerns whether Apple's products practice the '125 patent claims. This case concerns whether Apple, prior to developing Apple Pay, misappropriated

confidential CorFire/Fintiv information, incorporated it into Apple Pay, and then repeatedly misappropriated that stolen property by modifying it for use in various Apple devices while concealing its misdeeds for over a decade.

There are at least two (and possibly three) former CorFire employees residing within the subpoena power of this Court who participated in technical discussions with Apple relevant to Fintiv's allegations. AC ¶¶53-55, 66-77. Additionally, employees of InComm Payments, Inc.—a company based in Atlanta—participated in relevant meetings between CorFire and Apple. AC ¶¶72-73. The only witness with knowledge of the underlying events Apple identified in WDTX is Fintiv's president and CEO, Mike Love. Mot. 12. He, however, is a party witness willing to be available in this District for trial. Accordingly, the location of witnesses factor disfavors transfer.

### C. The Location of Documents and Convenience of Parties Are Neutral Factors

Apple has not identified any relevant documents, repository, or source of proof located in WDTX and acknowledges its own electronic documents can be produced from any location. Since no material evidence is uniquely tied to WDTX this factor does not support transfer.

Apple also asserts that WDTX is more convenient. Atlanta is no less convenient, and arguably more convenient, for Apple, its witnesses, and nonparty witnesses. Hartsfield-Jackson Atlanta International Airport is a major global hub

with hundreds of daily direct flights, and its airport is located minutes from downtown and is easily accessible by major highways and public transit. Atlanta, as an international transportation hub and major city, is a convenient and efficient forum for the parties, their employees, and third-party witnesses. These conditions disfavor transfer.

### D. Fintiv's Choice of Forum is Entitled to Deference and Disfavors Transfer

"[F]ederal courts traditionally accord a plaintiff's choice of forum considerable deference"—particularly where the chosen forum has a meaningful connection to the underlying conduct. *Gilbert-Daniels*, 2023 U.S. Dist. LEXIS 90524, *16-17 (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)). Eleventh Circuit courts should not disturb a plaintiff's choice of forum "unless it is clearly outweighed by other considerations." *Gilbert-Daniels*, 2023 U.S. Dist. LEXIS 90524, *17 (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996)).

Here, Fintiv's choice of forum is an important consideration militating against transfer. Fintiv's decision to litigate in Georgia is neither tactical nor attenuated; it reflects the fact that the core events, witnesses, and statutory claims arise from conduct centered in Georgia. Courts routinely give substantial weight to a plaintiff's forum choice where that forum has a substantive relationship to the operative facts, and that principle applies here. Disregarding Fintiv's chosen venue would

undermine the deference its owed, especially in a case rooted in Georgia conduct and governed by Georgia law. Accordingly, Fintiv's choice of forum should be respected and treated as a significant factor favoring resolution in Georgia.

### E. The Locus of Operative Facts Disfavors Transfer

As Apple acknowledges, this "factor considers the closeness of relation between the judicial forum and the cause of action—specifically, the site of events from which the claim arises." *Ward v. Figure Lending, LLC*, 2023 U.S. Dist. LEXIS 173701, *10-11 (N.D. Ga. June 21, 2023) (citation omitted); *see also* Mot. 13. In claiming this factor is neutral, Apple ignores the role and location of CorFire in its negotiations with Apple that underlie Fintiv's causes of action. Mot. 13-14. The operative facts involve discussions and information exchanges between CorFire employees located in Georgia and Apple employees in California, with further participation from Georgia-based employees of InComm. AC ¶¶72-73. Furthermore, Apple hired Georgia-based engineers and mobile payment specialists from CorFire, including Pascal Caillon and Jason Miller. At that time, CorFire's relevant operations were based in Alpharetta, Georgia. AC ¶¶67, 125-26. The locus here is Georgia and California not the WDTX, and this factor weighs against transfer.

### F. The Ability to Compel Unwilling Witnesses Disfavors Transfer

The availability of compulsory process over nonparty witnesses, such as former CorFire and InComm employees, weighs against transfer. Here, two such

witnesses (and maybe more), Kevin Zhu and Jaemin Lim, who were involved in negotiations and information sharing with Apple, appear to reside within the subpoena power of this District. AC ¶¶53-55, 66-77. Absent compulsory process, former CorFire and InComm employees, who will be key witnesses, may be unwilling to testify. Accordingly, the availability of compulsory process in this District disfavors transfer.

### G. The Relative Means of the Parties is Neutral

Fintiv and Apple are sophisticated business entities; and Apple is one of the world's most valuable companies and has offered no evidence that keeping the case in this District would impose a substantial financial hardship. Accordingly, the "means" factor is neutral.

### H. This Forum's Familiarity with Georgia Law Disfavors Transfer

Fintiv agrees with Apple that this factor is neutral with respect to federal law claims, but, with respect to Fintiv's Georgia RICO and GTSA claims, it "weighs against transfer because of this Court's familiarity with the claims under Georgia law." *SED, Inc. v. Seven Creeks Ent., LLC*, 2010 U.S. Dist. LEXIS 157454, *4 (N.D. Ga Oct. 27, 2010); *see also Williams v. Receivable Recovery Servs., LLC*, 2017 U.S. Dist. LEXIS 219683, *10 (N.D. Ga. July 27, 2017) ("[T]he Northern District of Georgia's familiarity with the governing law of Georgia counsels against transfer.").

### I. Trial Efficiency and the Interests of Justice Disfavor Transfer

"The public-interest factors include 'the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Pinnacle Peak Priv. Client Grp., LLC v. Keystone Cap. Partners, Inc*., 2022 U.S. Dist. LEXIS 20537, *8 (N.D. Ga. Jan. 5, 2022) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).

During the patent case, Apple repeatedly claimed that WDTX was not an appropriate forum for that case but now insists WDTX is the appropriate forum for this case, contending it would be more efficient to be heard before Judge Albright. Mot. 15-18. After the WDTX court denied Apple's motion to transfer to the Northern District of California ("NDCA"), Apple told the Federal Circuit that: (1) "Apple's witnesses and documents [] are in the Northern District of California," (2) "Apple's Austin campus has no connection to the accused technology," (3) "Fintiv has few sources of proof in – and a tenuous connection to – Texas," and (4) "the accused technology was developed" in NDCA." (Ex. B at 8.)

Now, Apple would have the Court forget its earlier admissions that the WDTX has no nexus to its development of and corporate knowledge about Apple Pay. Presumably, it is doing so because Judge Albright has twice granted summary judgment in its favor in the patent case, the second order being issued after his first

summary judgment order was overturned on appeal.

Equally unavailing is Apple's argument that Fintiv should be held to the position that, because WDTX was an appropriate forum for the patent case, it must also be an appropriate forum for this case. Apple's generalization ignores the differing factors between the patent case and the instant case, including (1) CorFire's ties to Georgia, (2) former CorFire witnesses with actual knowledge of the discussions between Apple and CorFire are located in this District, (3) the lack of witnesses from Fintiv or Apple in WDTX with actual knowledge of the Apple-CorFire dealings, and (4) the fact that third-party witnesses that were relevant to the patent case are irrelevant here. Judicial estoppel requires truly inconsistent positions on the same issue. Here, Fintiv is bringing a different case, requiring different proof, with a different nexus to the underlying facts, and different witnesses. The trade-secret and RICO claims, including claims under Georgia law, coupled with the Georgia-centered conduct and harms, make this District an appropriate forum. Apple's breathless assertions aside, there is no "mockery of the judicial system," and estoppel is inappropriate. Mot. 18.

Further, Georgia offers greater efficiency for this action. The core witnesses, documents, and conduct relevant to the trade secret claims are tied to Georgia, particularly the former CorFire operations in Alpharetta. Adjudicating the case where key events occurred is less burdensome than adjudicating the case in a venue

with little, if any, connection to the events at issue. This District is equally as capable as WDTX to adjudicate the federal issues raised here, and more qualified than WDTX to adjudicate Georgia state law claims.

The interests of justice likewise favor keeping the case in Georgia. This state has a strong sovereign interest in adjudicating alleged misappropriation committed within its borders involving Georgia businesses and Georgia employees. Georgia juries have a direct stake in enforcing Georgia's racketeering and trade secret laws, and Georgia courts have a well-developed body of precedent that ensures consistency and predictability. Moving the case away from the locus of the wrongdoing to a forum with far less connection to the operative facts would undermine those interests, not promote them.

In sum, trial efficiency and the interests of justice militate in favor of keeping the case in Georgia, where the evidence and law align, where the courts and juries have the strongest connection to the dispute, and where the resolution of these trade secret claims can proceed with greater fairness, predictability, and efficiency.

## IV. APPLE'S MOTION TO DISMISS SHOULD BE DENIED

### A. Motion to Dismiss Legal Standard

A complaint should only be dismissed on a Rule 12(b)(6) motion where the facts alleged fail to state a "plausible" claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); Fed. R. Civ. P. 12(b)(6). Generally, the

plaintiff only needs to provide the defendant with fair notice of the plaintiff's claim and the grounds for that claim. Fed. R. Civ. P. 8(a). Further, the plaintiff need only allege sufficient facts "to raise a right to relief above the speculative level." *Ruiz v. Sewon Am., Inc.*, 766 F. Supp. 3d 1251, 1262 (N.D. Ga. 2025) (citing *Twombly*, at 556). The Court must accept the facts alleged in the complaint and all reasonable inferences as true, construing them in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

RICO allegations are a "certain breed of fraud" and require a plaintiff to satisfy Rule 9(b) for both the enterprise and predicate acts. *Ruiz*, 766 F. Supp. 3d at 1281 n.15. This requires proof of "the who, what, when, where, and how circumstances of the fraud." *Lechter v. Aprio, LLP*, 565 F. Supp. 3d 1279, 1318 (N.D. Ga. 2021) (cleaned up).

Despite this "heightened standard," a plaintiff need only "plead the existence of the fraudulent scheme" rather than "each [party's] specific role." *Martinez-Lopez v. GFA Ala. Inc.*, 797 F. Supp. 3d 1309, 1342 (N.D. Ga. 2025) (citing *Aquino v. Mobis Ala., LLC*, 739 F. Supp. 3d 1152, 1179 (N.D. Ga. 2024)). Rule 9(b)'s "specificity" requirement "does not [] eliminate the concept of notice pleading, and the particularity requirement may be relaxed for allegations of prolonged multi-act schemes, which would permit plaintiffs to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud." *Ruiz*,

766 F. Supp. 3d at 1281 n.15 (cleaned up).

### B. Fintiv Timely Pled Its Trade Secret and Federal RICO Claims

A Rule 12(b)(6) dismissal on statute of limitations grounds is proper only if it is "apparent on the face of the complaint" that the claims are time-barred. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251 (11th Cir. 2003). Racketeering claims are governed by a four-year statute of limitations, under the RICO Act.[3] *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). Trade secret misappropriation claims are governed by a three-year limitations period under the Defend Trade Secret Act of 2016, 18 U.S.C. § 1836(d) ("DTSA"), and a five-year limitations period under the Georgia Trade Secret Act, O.C.G.A. § 10-1-766 ("GTSA"). The limitations periods under the DTSA and GTSA both begin to run after the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d); O.C.G.A. § 10-1-766. Similarly, "the limitations period for a civil RICO action begins to run when the injury was or should have been discovered." *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001).

Under the discovery rule, "a plaintiff must exercise reasonable diligence to discover any misappropriation of trade secrets," however, "mere suspicion of possible misappropriation does not amount to objectively reasonable notice

[3] Apple does not challenge the timeliness of Fintiv's Georgia RICO Act claim, which is governed by a five-year limitations period and accrues on discovering both the injury and pattern of racketeering activity. O.C.G.A. § 16-14-8.

sufficient to trigger the running of the statute." *Porex Corp. v. Haldopoulos*, 284 Ga. App. 510, 515-16 (2007). Thus, "the statute of limitation does not begin to run until a plaintiff has sufficient information to make a 'meaningfully colorable' claim." *Id.* at 515; *see, e.g.*, *Phosphorus Free Water Sols., LLC v. Ferrate Sols., Inc.*, 2022 WL 22987308, at *3-4 (M.D. Fla. Sep. 1, 2022) (same for DTSA claim); *accord Massey, Inc. v. Moe's S.W. Grill, LLC*, 565 F. App'x 821, 826 (11th Cir. 2014) (per curiam) (same for RICO claim). Additionally, even where the limitations period has run, "[t]he doctrine of equitable tolling allows a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to some inequitable circumstance." *Weissman v. Williams*, 2017 WL 11404587, at *18 (M.D. Ga. Sep. 29, 2017) (citations omitted).

Here, the Complaint details why the statutes of limitations did not begin to run until 2023, at the earliest. Moreover, even assuming Fintiv should have discovered the claims earlier, they were equitably tolled because of Apple's fraudulent concealment. *See, e.g.*, AC ¶¶56-57, 82-93, 147, 236-38, 290. Despite Fintiv's diligence, it did not and could not have discovered the facts necessary to plead a meaningfully colorable claim of misappropriation earlier because that information was uniquely in Apple's knowledge, possession, or control. Nor do Apple's attempts to raise factual disputes warrant dismissal at this stage.

### 1. Fintiv Could Not Reasonably Have Discovered Apple's Trade Secret Misappropriation and Racketeering Earlier

Contrary to Apple's contentions (Mot. 19-27), Fintiv's claims are not time-barred. As detailed in Fintiv's Complaint, Apple's persistent refusal to provide court ordered discovery in the patent case concerning pre-Apple Pay launch meetings between CorFire and Apple, coupled with complaints from other companies that had also sought to "partner" with Apple only to have their trade secrets misappropriated, put Fintiv on notice of its trade secret claim.

#### a. Fintiv Lacked Sufficient Knowledge of Apple's Trade Secret Misappropriation and Racketeering in July 2020 and June 2022

Apple argues that Fintiv, by July 2020, when it sought to amend its patent complaint in the WDTX patent action to add a claim for willful infringement, and no later than June 2022, when it sought emergency discovery in support of such an amendment, knew enough facts to bring a meaningfully colorable trade secret misappropriation claim. Mot. 20-21, 24. Apple is wrong.

Specifically, Apple argues that Fintiv's knowledge of pre-Apple Pay-launch meetings between Apple and CorFire in 2011 and 2012, and that Apple had hired former CorFire employees triggered the statute of limitations. At best this intimates Apple's possession of Fintiv's trade secrets but says nothing about whether such information was misappropriated. *See AWP, Inc. v. Henry*, 2020 WL 6876299, at *4-5 (N.D. Ga. Oct. 28, 2020) (holding "to simply allege [defendants] hired two

individuals who happen to possess knowledge of [plaintiff's] trade secrets" and "mere possession of a trade secret is not enough to state a claim" based on inevitable disclosure without "drastically expand[ing] the scope of the GTSA and DTSA."). Nor do post-Apple Pay-launch announcements "that Apple Pay uses NFC and secure element technology" (Mot. 20), evidence Fintiv's knowledge that Apple Pay used Fintiv's trade secrets. Contrary to Apple's contentions (Mot. 23), "mere knowledge that a company is competing in the marketplace and manufacturing similar parts is not dispositive on the accrual of the statute of limitations in a trade secret misappropriation case." *Porex*, 284 Ga. App. at 515.

Moreover, in 2020, the district court in the patent case *denied* Fintiv's motion to amend its complaint to add claims for willful patent infringement, acknowledging "there's some discovery [Fintiv] might have wanted to take" but finding the available facts were not sufficient to amend its pleadings to add willful patent infringement. *See* Dkt. 36-6 at 97:3-13. It thus follows that, if in 2020, Fintiv lacked sufficient facts to allege a claim of willful infringement, it also lacked sufficient facts to plead Apple's intentional misappropriation of its trade secrets.

b. <u>Fintiv Lacked Knowledge of Its Trade Secret Claims When Acquiring CorFire and Filings Its Patent Claims</u>

Fintiv also did not have sufficient information to make a meaningfully colorable claim prior to commencing the patent case in 2018. Mot. 21-23. At all relevant times, the technology that enables Apple Pay was within Apple's

knowledge, possession, and control. Nor were the specific details of the trade secrets CorFire shared in 2011 and 2012 with Apple pursuant to an NDA readily available to Fintiv, because critical information was uploaded to a share site controlled by Apple and other information was shared during live meetings between Apple and CorFire employees that took place three years before Fintiv acquired CorFire. AC¶¶10-11, 66-76. Further, key employees who participated in discussions with Apple were no longer employed by CorFire (and some were working for Apple) when Fintiv's acquisition of CorFire closed in 2015. *See, e.g.*, AC ¶¶12, 54, 67, 124-26. *See also ABB Turbo Sys. AG v. Turbousa, Inc.*, 774 F.3d 979, 986 n.2 (Fed. Cir. 2014) (noting "new owner, with presumably full pre-acquisition access to [predecessor's] internal documents and employees, did not detect the alleged misappropriations before buying the company.").

c. Fintiv Only Recently Formed a Reasonable Belief of Apple's Trade Secret Misappropriation

Well after the commencement of the patent litigation, Fintiv successfully compelled discovery from Apple concerning Apple's interactions with CorFire. Rather than shed light on its conduct, however, Apple steadfastly refused to comply with its discovery obligations, including by refusing to disclose detailed information about its dealings with CorFire. *See* AC ¶¶82-93. Ultimately, Fintiv did not become aware of possible trade secret misappropriation until the Spring of 2023. At that time, given the totality of the facts and circumstances, including Apple's on-going

evasiveness in providing basic disclosure about its interactions with CorFire, Fintiv came to reasonably believe that Apple misappropriated Fintiv's trade secrets. *See id.*

In *MedioStream, Inc. v. Microsoft Corp.*, a case applying California law whose facts and reasoning are analogous here, the district court denied a motion to dismiss a trade secret counterclaim because the pleadings plausibly alleged that the discovery rule could apply to toll the statute of limitations. 749 F. Supp. 2d 507, 517 (E.D. Tex. 2010). In that case, as is the case here, the claim centered on trade secrets that were obtained under false pretenses and covertly copied and distributed in violation of the parties' agreement. *See id.* at 515-17. Although these unauthorized acts occurred years earlier, the counterclaimant argued it could not have known of the misappropriation until discovery began in the patent action, and the court agreed that the discovery rule could apply to toll the statute for the trade secret claim. *See id.*

Here, Apple engaged in a covert and fraudulent scheme to misappropriate Fintiv's trade secrets, and Fintiv lacked objectively reasonable notice of its claims. *See, e.g.*, AC ¶¶10-13, 66-77, 82-93, 283, 306. After uncovering evidence of confidential meetings between Apple and CorFire, Fintiv diligently followed up to obtain additional information about these meetings, including through a motion to compel, but Apple thwarted those efforts at every turn. *Id.* ¶¶66, 85-90. During this time, other companies were shining light on similar conduct, whereby Apple would

invite discussions under false pretenses to misappropriate technology Apple coveted. *See id.* ¶¶42-44, 82-92, 137-41, 154. While none of these factors standing alone is arguably sufficient to have triggered the statute of limitations, by 2023, the combination of these facts and circumstances provided Fintiv with a sufficient basis to allege trade secret claims against Apple.

### 2. Apple Fraudulently Concealed Its Trade Secret Misappropriation and Racketeering

In the Eleventh Circuit, "equitable tolling is appropriate in situations where the defendant misleads the plaintiff, allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the wrong perpetrated against her, as is the case here." *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2005) (citation omitted). In general, to invoke equitable estoppel, "plaintiffs must plead facts suggesting that defendants engaged in affirmative acts that concealed or were designed to conceal the [wrong]" or that "defendants' conduct was inherently self-concealing." *Se. Ready Mix, LLC v. Argos N. Am. Corp.*, 2018 WL 8263138, at *13 (N.D. Ga. Aug. 22, 2018). To defeat equitable tolling, defendants "have the 'heavier burden' to prove, 'indisputably,'" that the plaintiff "had notice sufficient to prompt it to investigate and that, had it done so diligently, it would have discovered the basis for its claims." *Bibb Cnty. Sch. Dist. v. Dallemand*, 2019 WL 1519301, at *8 (M.D. Ga. Apr. 8, 2019) (citations omitted).

Here, even assuming the statute of limitations started to run prior to 2023

(Mot. 26-27), the limitations period should be equitably tolled because Apple used deceptive means to obtain Fintiv's trade secrets and then concealed its theft and fraud. *See* AC ¶¶66-77, 92, 145-47, 236-38. Apple then compounded its malfeasance during the patent case by withholding discovery and obstructing Fintiv's efforts to discover facts that could have uncovered Apple's trade secret misappropriation. *See* AC ¶¶57, 82-93, 290. At the very least, Apple's many alleged acts of concealment raise questions of fact not resolvable on a motion to dismiss.

#### 3. Fintiv Also Alleges Independent Acts of Misappropriation and Racketeering Within Three Years of the Complaint

The separate accrual rule "provides that if a new RICO predicate act gives rise to a new and independent injury, the statute of limitations clock will start over for the damages caused by the new act." *Lawrence Holdings, Inc. v. ASA Int'l, Ltd.*, 2014 WL 5502464, at *15 (M.D. Fla. Oct. 30, 2014) (citation omitted). While an injury that is merely "continuation of an initial injury" is not new and independent, such determination "is better suited for the summary judgment stage when this Court has the benefit of discovery and considering matters outside the four corners of the Complaint." *Id.* at *15-16.

Here, while Apple contends that its initial theft of Fintiv's trade secrets constitutes one prolonged continuation of a single injury (Mot. 24-26), the Complaint alleges independent acts of misappropriation and RICO predicate acts sufficient to state claims within each applicable statute of limitations. *See, e.g.*, AC

¶¶151-52, 170, 181, 211, 263, 269, 287. Specifically, the Complaint alleges that each time Apple introduced Apple Pay to a new device or market, including devices that did not even exist when Apple first misappropriated Fintiv's trade secrets, Apple engaged in separate and new predicate acts that constitute separate and distinct acts of unauthorized access and misappropriation. *See, e.g.*, *id.* These acts, in turn, inflicted new and independent injury on Fintiv. *See, e.g.*, AC ¶¶119-22, 201, 269, 310.

In sum, and at this early stage, Apple's motion must be denied because the Complaint sufficiently alleges facts demonstrating Fintiv's allegations are not time-barred, give rise to tolling, and include predicates within the limitation periods.

### C. Fintiv's Georgia RICO Claim is Not Preempted by the GTSA

The GTSA does not preempt Fintiv's Georgia RICO claim. Apple's Motion rests on an overbroad conception of GTSA preemption. Apple contends that any claim arising from a business relationship in which trade secrets were allegedly misappropriated is necessarily preempted. Mot. 28-29. Georgia courts reject such a categorical approach. GTSA preemption is conduct-specific, not relationship-based, and does not preempt "civil remedies that are not based upon misappropriation of a trade secret." *Capital Inventory, Inc. v. Green*, 2022 WL 4283205, *16-18 (N.D. Ga. Mar. 29, 2022) (denying preemption at summary judgment where plaintiff alleged conduct "other than the misappropriation of proprietary information to support its

claim"). The key inquiry is whether the Georgia RICO claim goes "beyond those facts that would plainly and exclusively spell out only trade secret misappropriation." *See Candy Craft Creations, LLC v. Gartner*, 2015 WL 1541507, *14-16 (S.D. Ga. Mar. 31, 2015); *Capital Inventory*, 2022 WL 4283205 at *16-18.

Here, Fintiv alleges statutory violations under Georgia law relating to multiple instances of wire fraud, false statements, computer trespass, and theft. AC ¶¶18-29, 66-77, 94-123, 220-78. All of which are independent statutory causes of action under Georgia law unrelated to trade secret misappropriation. For example, Fintiv alleges that Apple "falsely represented, in documents and public communications intended to influence regulated financial-institution conduct, that Apple independently designed, developed, and engineered the provisioning, tokenization, secure-element workflows, and mobile-wallet architecture used in Apple Pay," which "influence[d] the conduct of financial institutions regulated by Georgia's banking and financial services authorities…." AC ¶¶113-23, 134-35, 234-42. Fintiv also alleges Apple committed wire fraud by publicly and falsely declaring that Fintiv's misappropriated trade secrets underpinning Apple Pay were Apple's own "hardware and software." AC ¶¶134-35, 255-65. Fintiv's Georgia RICO allegations go beyond facts that would "exclusively spell out only" trade secret theft and thus prevents preemption of its Georgia RICO claim. *See Candy Craft Creations*, 2015 WL 1541507, *14-16; *Capital Inventory*, 2022 WL 4283205 at *16-18; *FTI Consulting,*

*Inc. v. Secretariat Advisors, LLC*, 2025 WL 756024, *10-11 (N.D. Ga. Mar. 7, 2025) (declining to dismiss multiple claims for preemption that involved allegations "unrelated to trade secret misappropriation").

Additionally, it is improper to dismiss Fintiv's Georgia RICO claim as preempted by the GTSA at the pleading stage because discovery is necessary to determine the full extent of what Apple wrongfully stole from Fintiv, whether it constituted a trade secret, and how it was then exploited. *See TexDoor, LLC v. Samford*, 2025 WL 2844775, *4 (M.D. Ga. Oct. 7, 2025) (requiring "additional discovery" to determine whether plaintiff's Georgia Computer Systems Protection Act claims were preempted by GTSA); *AirWatch LLC v. Mobile Iron, Inc.*, 2013 WL 4757491, *5-6 (N.D. Ga. Sep. 4, 2013) (denying motion to dismiss because preemption "premature"). Accordingly, Fintiv's Georgia RICO claim is not preempted.

**D. Fintiv Has Adequately Pled Its Trade Secret Claims**

Apple argues that Fintiv has not pled its DTSA and GTSA trade secret claims with the requisite particularity. Mot. 29-31. Fintiv's trade secret claims satisfy the Rule 8 notice pleading requirements.

Under the DTSA, "trade secret" is broadly defined. *See* 18. U.S.C. § 1893(3). The GTSA's "trade secret" definition is substantially identical under O.C.G.A. § 10-1-761(4), and whether information is protected as a "trade secret" under either statue

is a question of fact for the fact finder after the evidence has been presented from both sides. *See Vero Fin. Techs., Inc. v. Maddox,* 2024 WL 2928536, *4-5 (N.D. Ga. June 10, 2024); *BRP Colleague, Inc. v. Gillen*, 2023 WL 3641954, at *4 (N.D. Ga. Mar. 7, 2023) (same).

Fintiv's alleges that the trade secrets "consist of technical designs, implementations, expertise, and know-how relating to the proprietary secure element and NFC-enable mobile wallet technologies that CorFire conceived of and developed through a significant expenditure of time, effort, and resources" and "end-to-end technical information and implementation details of CorFire solutions…" AC ¶¶280, 303. Additionally, Fintiv identified the information that was provided to Apple with reasonable particularity, including information uploaded to a share site and disclosed during meetings with Fintiv's technical team. AC ¶¶9-12, 66-77, 145, 184-85, 268, 286, 289, 292, 294, 309, 311. These allegations provide Apple the requisite notice at the pleading stage. *See Andritz Inc. v. M&G Finanziaria S.r.L*, 2016 WL 1109123, *3, *12 (N.D. Ga. Mar. 22, 2016) (finding allegations that defendant misappropriated trade secret information such as "in-depth technical, equipment, and engineering specifications" and "machine and equipment connection data and technical requirements" was sufficient to survive motion to dismiss).

**E. Fintiv Has Adequately Pled Its RICO Claims**

To plead a federal RICO claim under 18 U.S.C. § 1962(c) and a Georgia RICO

claim under O.C.G.A. § 16-14-4(b), Fintiv must allege (1) the existence of an "enterprise" and (2) "a pattern of racketeering activity involving at least two predicate criminal acts." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1208 (11th Cir. 2020); *see* O.C.G.A. § 16-14-4(b).

### 1. Fintiv Alleges the Existence of An Enterprise

Apple argues that Fintiv fails to properly plead an enterprise because it cannot show a "common purpose" among Apple and the Enterprise members, but only a "'generally shared interest in making money.'" Mot. 32 (quoting *Cisneros* 972 F.3d at 1211). However, even "where the participants' ultimate purpose is to make money for themselves, … plausibl[e] alleg[ations] that the participants shared the purpose of enriching themselves through a particular criminal course of conduct" are sufficient. *Cisneros*, 972 F.3d at 1211.

Moreover, Apple mischaracterizes Fintiv's allegations about the Enterprise's shared purpose as mere "legitimate commercial transactions." Mot. 34-35. In support of its argument, Apple relies on *Ray v. Spirit Airlines*, *Inc.*, a case where plaintiffs "claimed that other members of the alleged enterprise were involved in [a course of conduct] … without offering any factual averments to make the assertion plausible" and failed to allege that the enterprise members "were in any way involved in the actual decisions of how to portray the [fraudulent fee]," and described only "[one member's] purpose, [but] nothing about the actions of the other

members of the putative enterprise." 836 F.3d 1340, 1353-54 (11th Cir. 2016). In contrast to the paucity of allegations about the *Ray* enterprise members, the Complaint details the specific involvement of each member of the Enterprise, from the "development and roll out [of] Apple Pay, including regarding issues around tokenization, network security and access, transaction flows, and to settle commercial terms," to "[p]ost-launch, rapid onboarding of additional retailers, along with continuous feature enhancements and increased merchant acceptance." *See, e.g.*, AC ¶¶94-112.[4]

Moreover, Apple's argument that Fintiv does not plead that the Enterprise Members were aware of the "'true origins' of Apple Pay" and thus could not have shared in the common purpose (Mot. 33), is wrong. Apple conflates the elements of an enterprise and the pattern of racketeering. *See, e.g.*, *Thompson v. State*, 440 S.E.2d 670, 673 (Ga. 1994) ("An 'enterprise' is not a criminal act in itself; it is a description of the entities involved in the RICO violations, and may include entities involved in illicit as well as licit activities … It is the … predicate acts … which [are] illegal, not the 'enterprise,' although the enterprise may be proved by the same evidence which proves a pattern of racketeering.") (citation modified). "[A]t the outset[,] an

[4] *Allen* is likewise inapposite, where the complaint included only "conclusory statements that the [enterprise members] were aware of the [conduct]" and are offered "no specifics as to [their] involvement" in the conduct. *Allen v. First Unum Life Ins. Co.*, 2019 WL 1359480, at *4-5 (M.D. Fla. Mar. 26, 2019).

'enterprise' itself need not be illicit in order for RICO liability to attach to the racketeering conduct of an individual" and "the existence of both an 'enterprise' and 'racketeering activity' within that enterprise can be proved by circumstantial evidence." *Faillace v. Columbus Bank & Tr. Co.*, 605 S.E.2d 450, 454 (Ga. Ct. App. 2004); *see also Thompson*, 440 S.E.2d at 673 (Georgia RICO does not "require[] that each defendant in an enterprise have full knowledge of all facets and elements of the enterprise and all its members or actors.") (citation modified).

Fintiv's allegations regarding the Enterprise Members' conduct "evidences a knowing and intentional alliance that disregarded potential legal and ethical violations to secure control over the mobile payment market" and "disregard of their own institutional edicts" and lack of diligence "concerning the criticality of protecting third-party intellectual property" pertaining to "their dealings with Apple." AC ¶¶33-41, 94-112. Such allegations are sufficient at this stage to demonstrate a common purpose. *See Turk v. Morris, Manning & Martin, LLP*, 593 F. Supp. 3d 1258, 1310 (N.D. Ga. 2022) (allegations that defendants "worked together on multiple transactions" and "all allegedly played a key role in that particular component of the alleged scheme" established an association-in-fact enterprise).

**2. Fintiv Adequately Alleges a Pattern of Racketeering Activity**

To establish a pattern of racketeering activity, Fintiv must allege "at least two

acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). *See Weissman v. Cheokas*, 2019 WL 13099203, at *8 (M.D. Ga. Sep. 11, 2019).

***Trade Secret theft:*** Apple first challenges whether Fintiv's trade secret theft claims can serve as a predicate act by reiterating its claim that Fintiv failed to "adequately identify any trade secrets." Mot. 35. As established *supra* 27-29, Apple's argument fails.

***Wire fraud*****:** Apple next argues that Fintiv's wire fraud predicate is not viable because "Fintiv alleges that Apple tried to deceive the general public and Apple's business partners, not Fintiv." Mot. 36. However, "nothing in the text of the Federal RICO statute imposed a first-party reliance requirement" and "Plaintiffs do not have to establish reliance … to support their Georgia RICO claims." *Turk*, 593 F. Supp. 3d at 1302 (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008); *Pollman v. Swan*, 716 S.E.2d 191, 193 (2011). Indeed, Fintiv need not but does "show[] that *somebody* relied on the alleged misrepresentations[,]" which in turn caused its injuries. *Turk*, 593 F. Supp. at 1302 (emphasis in original). The Complaint makes this showing with allegations that "[f]inancial institutions, payment networks, and processors relied on Apple's false statements regarding Apple Pay's origins

when deciding to integrate with Apple Pay, allocate engineering resources toward Apple-mandated architectures, and forgo engagement with Fintiv." AC ¶¶171-74; 255-57; 259, 263.

These allegations are distinct from those in *Ray*, on which Apple further relies to assert that Fintiv "fails to establish proximate cause." Mot. 36. There, plaintiffs failed to allege "any link at all—between [defendant's] presentation of [a fraudulent fee] and the plaintiffs' decision to purchase tickets on [defendant's] website[,]" nor "that [they] would not have purchased their tickets from the [] website had they known that the fee was not authorized." *Ray*, 836 F.3d at 1350. Here, Fintiv explicitly alleges that, "[h]ad Apple accurately disclosed that the underlying mobile-wallet architecture originated from Fintiv's confidential and proprietary technology, banks and networks would have evaluated alternative integration strategies, pursued competitive wallet frameworks, or sought licensing arrangements directly with Fintiv." AC ¶173.

Further, contrary to Apple's claim that "Fintiv fails to point to a single lost business opportunity, let alone link it to the only examples of alleged fraud in the [Complaint]" (Mot. 36), Fintiv alleges that it was "fence[d]" out of the mobile-wallet market due to the Enterprise's "conspiracy to exploit Apple Pay's platform to impose supra-competitive fees, exclude rivals, and maintain market dominance in the digital payments sector [and] restricti[on] [of] third-party access to key Apple Pay

functionality, thus reserving this functionality for Apple Pay and Apple Wallet only[,] ... [and] prevent[ing] others from creating competing NFC mobile-wallets on iOS, reinforcing Apple Pay's dominant position and reducing consumer choice and innovation in contactless payments." AC ¶¶19, 25, 31. Fintiv links this harm to Apple's efforts "to mask its underlying theft of Fintiv's mobile wallet technology and trade secrets" to "fraudulently advance[] the false narrative that it is the developer of Apple Pay." AC ¶¶32-33, 132-36, 168-73, 259-63.

***False Statements*: Apple again overlooks Fintiv's allegations, asserting that Fintiv's false statements claims (AC ¶¶234-43) fail to meet Rule 9(b)'s heightened pleading requirements because Fintiv does not "specifically identify any false statement, identifying only broad and vague categories." Mot. 37.[5] The Complaint adequately details Apple's precise statements, "the time, place and person responsible for the statement[s]," the misleading content of the statements, and "what the [Enterprise] gained by the alleged fraud." *See Martinez-Lopez*, 797 F. Supp. 3d at 1342 (denying motion to dismiss Georgia RICO claim); *see, e.g.*, AC ¶¶32-33, 132-36, 168-71, 234-42, 259-63.

---

[5] Apple's argument that "Fintiv fails to identify any specific government matter to implicate Section 16-10-20" (Mot. 37) likewise fails. Fintiv's identification of the Georgia Department of Banking and Finance and other Georgia state agencies (AC ¶¶236, 239-40) is sufficient at this stage. *See Stewart-Jackson Pharmacal, Inc. v. River's Edge Pharms., LLC*, 2010 WL 11602697, at *12 (N.D. Ga. Sep. 24, 2010) (allegations were sufficient where "[p]laintiffs specified the agencies and department that regulated the practice of pharmacy.").

***Computer Theft and Trespass Predicates:*** For Fintiv's Computer Fraud and Abuse Act (the "CFAA") claim, Apple asserts that it could not "exceed[] authorized access" to CorFire's confidential materials because Apple "had legitimate access to [the] files," and therefore "its reason for accessing them is irrelevant." Mot. 38 (citing *Van Buren v. United States*, 593 U.S. 374 (2021)). Apple conflates "purpose" with "authorized access" by likening the facts to *Van Buren*, where defendant was authorized to obtain the information at issue from a database through his employment, and, as such "did not 'excee[d] authorized access'" when he did so, even if "for an improper purpose." *Id.* at 396. In contrast, Fintiv's allegations do not rest on Apple's "reason for accessing" its confidential materials (Mot. 38), but on Apple's access beyond that authorized under "the parties' confidentiality agreement[,]" continued access after authorization to do so terminated, and transfer of files to "teams that were not permitted to receive them." AC ¶¶185-87. These allegations are sufficient to establish that Apple exceeded its access at this stage.[6]

Apple's argument that Fintiv cannot establish computer theft and trespass

---

[6] *See, e.g.*, *Zap Cellular, Inc. v. Weintraub*, 2022 WL 4325746, at *7 (E.D.N.Y. Sep. 19, 2022) (denying motion for judgment on the pleadings where complaint alleged that defendant accessed servers "*after* he was no longer authorized to do so, having been terminated" and after the "vendor contract with [plaintiff] having expired."); *Leitner v. Morsovillo*, 2021 WL 2669547, at *4 (W.D. Mo. June 29, 2021). ("questions regarding a person's authorized access and the scope of that authorization, as well as the specific information he or she accessed and the location of that information, are fact-intensive inquiries.").

under Georgia law because "Apple is the owner of the computer system in question" and thus cannot "'us[e] a computer or computer network with knowledge that such use is without authority,'" (Mot. 38-39 (citing O.C.G.A. §§ 16-9-93(a)-(b)), likewise fails because it ignores that the "computer network" at issue was a shared network, subject to the parties' NDAs, which "expressly restricted" Apple's authorization for use. *See, e.g.*, AC ¶¶10, 54, 184-86, 247-48, 281. Apple's continued access, retention, and redistribution of the confidential materials on this shared network exceeds Apple's authority. AC ¶¶247-51; O.C.G.A. §§ 16-9-93(a)-(b); *see DuCom v. State*, 654 S.E.2d 670, 676 (Ga. Ct. App. 2007) (affirming conviction under § 16-9-93(a) where defendant exceeded authorized access of network through copying and transferring of data "after her negotiations with [company] had broken down and long after she had formed an intent to start her own [] company with [company's] clients.").

***Stolen Property Predicates***: Apple also contends that Fintiv fails to establish RICO elements under the NSPA (18 U.S.C. § 2314) because the stolen property at issue must be tangible (Mot. 39-40).[7] Apple ignores that the Complaint describes

---

[7] Apple's cited cases are inapposite. *See Dowling v. United States*, 473 U.S. 207, 208 (1985) (evaluating conviction for the transport of recording copyrighted materials); *U.S. v. Aleynikov*, 676 F.3d 71, 78 (2d Cir. 2012) (dismissing indictment where "there was no allegation that [defendant] physically seized anything tangible … such as a compact disc or thumb drive containing source code"); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1147 (E.D. Mo. 2007), *vacated in part*, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007) (finding allegations "that

CorFire's confidential materials, at the time of Apple's theft, as "file[s] exist[ing] in a fixed, material form stored on a physical server … capable of being downloaded, transferred, and transported across state and national lines." AC ¶¶200-03. Fintiv also alleges that Apple uses this stolen property in each of its physical iPhone products at the manufacturing stage, which are then shipped to stores or customers. AC ¶¶191-92. That Fintiv's intellectual property was stored on physical servers at CorFire, then taken and stored by Apple on their physical servers, then incorporated into physical mediums, establishes the requisite tangibility. *See, e.g.*, *U.S. v. Alavi*, 2008 WL 1971391, at *2 (D. Az. May 2, 2008) (upholding charge based on allegations that defendant "physically stole the software program from his employer by loading it onto his computer, and then transported it in its electronic form on his laptop computer in interstate and foreign commerce"); *U.S. v. Riggs*, 739 F. Supp. 414, 421 (N.D. Ill. 1990) (finding that the defendant's "transfer of [stolen computer-stored] information across state lines would clearly constitute the transfer of 'goods, wares, or merchandise' within the meaning of [the NSPA]" just as if the information "had been affixed to a floppy disk, or printed out on a computer printer"); *One Stop*

---

Defendants engaged in a 'dishonest' transaction" through alleged anticompetitive "overcharges" inadequate to "rise to the level allowing recovery under RICO"); *U.S. v. Yijia Zhang*, 995 F. Supp. 2d 340, 349-50 (E.D. Pa. 2014) (dismissing indictment which alleged defendant "transferred electronic files over the internet from a network to a server[,]" but not any "physical manifestation[,]" such as "information stored in computer hardware").

*Deli, Inc. v. Franco's, Inc.*, 1993 WL 513298, at *8 n.8 (W.D. Va. Dec. 7, 1993) (upholding RICO claim based on interstate transportation of stolen goods where "the trade secrets in this case were reduced to tangible form when transported").

Finally, Apple claims that Fintiv's State RICO stolen property predicates are not pled with particularity and do not allege facts to support their elements. Mot. 40. Apple is wrong. Fintiv meets the heightened pleading standard of Rule 9(b) to establish theft by deception by: (1) describing the six specific meetings with Apple in 2011 and 2012 at which Apple convinced CorFire they would partner together to develop Fintiv's proprietary mobile wallet technology into a worldwide payment business, AC ¶¶66-77; (2) identifying "detailed technical discussions," where "Apple learned the proprietary details concerning CorFire's secure element and mobile wallet capabilities" and identifying CorFire's intellectual property as "confidential proprietary information and a trade secret," AC ¶¶10-11, 66-77; and (3) alleging Apple "hired away" two CorFire employees "who were knowledgeable about CorFire's proprietary mobile wallet technologies, and who had attended in-person meetings with Apple in 2011 and 2012[,]" and "exploited the access it had fraudulently gained by stealing Fintiv's proprietary mobile wallet technology" using them to launch Apple Pay, AC¶¶12, 127-30. These detailed allegations meet the requisite pleading standard for an O.C.G.A. § 16-8-3 claim. *See Bivin-Hunter v. Wyndham Vacation Resorts*, 2010 WL 11601332, at *11 (N.D. Ga. Sep. 1, 2010).

In support of its theft by conversion predicate act under O.C.G.A. § 16-8-4(a), Fintiv alleges that Apple obtained access to "proprietary details concerning CorFire's secure element and mobile wallet capabilities[,]" which were protected as confidential trade secrets pursuant to the parties' NDA, "for the sole and limited purpose of enabling Apple to review CorFire's confidential materials." AC ¶¶10-11, 66, 74, 127, 129, 145, 184-85, 188, 243-44, 253-54, 280, 285-87, 308-311. Then, in violation of that NDA and far beyond "the narrowly defined purpose of the partnership evaluation," Apple "distribut[ed], re-engineer[ed], and embedd[ed] Fintiv's trade secrets into Apple Pay system and its underlying device-level wallet frameworks" and "continued to repurpose these materials well after the termination of any business discussions with Fintiv, without permission and in direct violation of express confidentiality obligations." AC ¶¶146-47, 185; *see, e.g.*, *id.* ¶¶13, 186, 188, 287. These allegations sufficiently establish theft by conversion. O.C.G.A. § 16-8-4(a) (Defendant "commits the offense of theft by conversion when, having lawfully obtained … property of another … under an agreement … to make a specified application of … such property, he knowingly converts the … property to his own use in violation of the agreement.").

Finally, the Complaint provides ample factual support to establish that Apple received and retained Fintiv's trade secrets through deception and false pretenses, then went on to access, distribute, and sell products containing this stolen

technology. These allegations likewise establish Apple's theft by receiving stolen property as a predicate act. AC ¶¶245-46; *See* O.C.G.A. § 16-8-7(a) (A defendant "commits the offense of theft by receiving stolen property when he receives … or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner.").

## V. CONCLUSION

For the foregoing reasons, Apple's Motion should be denied in its entirety.

Dated: January 23, 2026

RESPECTFULLY SUBMITTED,

By: /s/ *Paul G. Williams*

Marc E. Kasowitz
Mkasowitz@kasowitz.com
Ronald R. Rossi
Rrossi@kasowitz.com

**KASOWITZ LLP**
1633 Broadway
New York, NY 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

John W. Downing (CA Bar No. 252850)
jdowning@kasowitz.com

**KASOWITZ LLP**
101 California Street, Suite 3950
San Francisco, California 94111
Telephone: (650) 453-5170
Facsimile: (650) 453-5171

Paul G. Williams (GA Bar No. 764925)
pwilliams@kasowitz.com

**KASOWITZ LLP**
1230 Peachtree Street N.E., Suite 2445
Atlanta, Georgia 30309
Telephone: (404) 260-6080
Facsimile: (404) 260-6081

**Attorneys for Plaintiff**
**FINTIV, INC.**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument was filed and served using the Court's CM/EFC system which will deliver it electronically to all counsel of record on this 23rd day of January, 2026.

*/s/ Paul G. Williams*
Paul G. Williams

*Counsel for Plaintiff*
*Fintiv, Inc.*